**HORNER–RAUSCH OPTICAL COMPANY et al., Plaintiffs-Appellants,**

v.

**R. A. ASHLEY, Jr., et al., Defendants-Appellants.**

Court of Appeals of Tennessee, Middle Section.

Oct. 29, 1976.

Certiorari Denied by Supreme Court March 7, 1977.

Eugene Jackson and Robert L. Jackson, Nashville, for plaintiffs-appellants.

R. C. Cougill, Atlanta, Ga., for amicus curiae, The Federal Trade Commission.

William C. Koch, Jr., Nashville, Tenn., for defendants-appellants.

OPINION

DROWOTA, Judge.

This is an appeal from a trial court judgment upholding the constitutionality of Tennessee Code Annotated § 63–1404(g), (h), and (j) and several rules promulgated thereunder, all of which have the effect of prohibiting dispensing opticians from advertising in Tennessee. Plaintiff opticians allege that these provisions are invalid because they violate fourteenth amendment due process and equal protection, first amendment freedom of speech, and corresponding guarantees of the Tennessee Constitution. They further urge that these provisions constitute an invalid exercise of the police power under the Tennessee Constitution and contribute to a restraint of trade. Since we hold the challenged provisions violative of the first amendment to the United States Constitution, as applied to the states by the fourteenth amendment, we do not reach any of plaintiffs' arguments as to their invalidity on other grounds.

Plaintiffs brought this declaratory judgment action against the Attorney General of Tennessee, the Tennessee Board of Dispensing Opticians, and the Licensing Board for the Healing Arts in the First Circuit Court for Davidson County to determine the constitutionality of T.C.A. § 63–1404(g), (h), and (j), which enumerates the following acts as grounds for the suspension or revocation of certification of dispensing opticians:

(g) Advertis[ing] by the use of handbills, circulars, posters, window displays, neon signs, radio, television or newspaper.

(h) Advertising any free professional services or prices for professional services . . .

(j) Advertising to guarantee any professional services; . . . .

Plaintiffs also questioned the validity of Rules 12.01, 12.02, and 12.03, which were promulgated by the Tennessee Board of Dispensing Opticians under the authority of T.C.A. § 63–1401, and which elucidate in more specific terms the statute's general ban on advertising by dispensing opticians.[1] The court below carefully examined and rejected each of plaintiffs' arguments and upheld the validity of the above quoted statutory provisions and of Rule 12.02 in a thorough memorandum opinion. The court also held that Rule 12.01 is invalid as beyond the Board's authority under the statute, and that Rule 12.03 is invalid to the extent it attempts to prohibit Tennessee dispensing opticians from advertising, in other states, the availability of their services in other states. Each party now appeals that portion of the decision adverse to his position.

Plaintiffs in this case are Horner-Rausch Optical Co., a Tennessee corporation, George Bandy, its president and a licensed Tennessee dispensing optician, and Walter Rich, vice-president of Horner-Rausch. Plaintiffs operate as dispensing opticians and have several stores in Middle Tennessee for this purpose. At trial, plaintiff Bandy detailed the services performed by a dispensing optician, who is required to be licensed and subject to regulation under Tennessee law. The customer comes to the dispensing optician with a prescription for lenses from an ophthalmologist, who is an M.D., or from a optometrist, who is qualified to examine eyes for refractive error. The dispensing optician takes the prescription, helps the customer select a frame, advises him as to fit and measures the distance between the customer's pupils. He then sends all this information to a laboratory optician, a technician not required to be licensed, who grinds the lenses to the proper strength, fits them into the frame, and returns them to the dispensing optician. The dispensing optician then checks the glasses for fit and to ensure that the lenses have been ground to the specifications of the prescribing doctor, and his job is completed. Other testimony concerned the correlation of advertising and the price of glasses. On this subject, plaintiffs' expert witnesses expressed the opinion that, due mainly to an increased volume of business and competition, advertising by dispensing opticians results in substantially lower prices than those that prevail when such advertising is forbidden. Defendants presented no evidence.

At one time, the United States Supreme Court regarded advertising, or "commercial speech," as a form of communication unprotected by the first amendment. *Valentine v. Chrestensen*, 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262 (1942). More recently, however, the Court has shown a trend away from this approach, choosing instead to distinguish purely commercial speech, which the Court professed to leave unprotected, from commercial speech that contained some element of public interest, which it held protected. *Bigelow v. Virginia*, 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975); see *Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations*, 413 U.S. 376, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973). In its latest pronouncement on the subject, the Court has continued this trend by abandoning its initial approach and holding that even purely

---

**1.** See appendix for Rules 12.01–12.03.

commercial speech is not outside the protection of the first amendment. *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976).

*Virginia Citizens* held unconstitutional as violative of the first amendment a Virginia statute that prohibited pharmacists from advertising the price of prescription drugs in any manner. In discussing the practice of pharmacy (stipulated to be a "profession" by the parties) in Virginia, the Court noted that only pharmacists licensed by the state could dispense prescription drugs, that 95% of prescriptions were prepared by use of dosage forms supplied by the manufacturer, and that the profession was subject to broad regulation, of which the advertising ban was only a part. After holding that commercial speech is not outside first amendment protection because the public interest is served by well informed commercial decisions, the Court carefully analyzed the effect of this holding on the case before it.

The Court first conceded that there is an aspect of professionalism in pharmacy, since it requires skill and expertise independent of the physician's, and that the state has a strong interest in maintaining this professionalism. After listing the state's arguments in favor of the ban on advertising, most of which basically asserted that advertising would result in a lower quality of pharmaceutical service, the Court found them largely offset by the imposition of high professional standards through the other regulations in the statutory scheme. Citing *Williamson v. Lee Optical Co.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955), the Court stated that while the state's justifications for the ban had there been held sufficient to satisfy due process and equal protection, the first amendment presented a different question. This question was whether the state should be permitted to take the "highly paternalistic" approach of "protecting" its citizens by keeping them in ignorance on the theory that, were they informed of prices, they would rush to the least expensive pharmacy regardless of its quality. Stating that the first amendment answers this question in the negative, the Court said the state is required instead to assume that advertising information is not harmful in itself and that, since people will act in their own best interests if informed, it is better to inform them. Finally, the Court stressed that its holding that the ban on price advertising by pharmacists violated the first amendment does not forbid all restrictions on the time, place, and manner of advertising, or the prohibition of misleading or illegal advertising; it also noted that the electronic media were not involved in the case. Chief Justice Burger's concurring opinion emphasized the Court's further point that a true "profession," such as medicine or law, would present a different question.

We think that *Virginia Citizens* is controlling in the case at bar. For purposes of the Supreme Court's reasoning in that case, there is no meaningful distinction between pharmacists and dispensing opticians. There is an aspect of professionalism and skill in both, but there is also a large element of mere retail selling of a standardized product. As was the case with the state's interest in pharmacy in *Virginia Citizens*, the state's interest in the quality of service and professionalism of dispensing opticians here seems protected by other provisions of the regulatory scheme that more directly affect those qualities than does the ban on advertising. See T.C.A. §§ 63–1401 —63–1410. It is clear that, by prohibiting advertising by dispensing opticians, Tennessee is seeking to protect its citizens in a manner that has now been declared violative of the first amendment.

Nor do the other differences between *Virginia Citizens* and this case persuade us to reach a different result here. That the plaintiffs here are dispensing opticians who wish to advertise, while in *Virginia Citizens* they were members of the public who wished the benefit of advertising information, is immaterial, for the Court grounded its finding of a first amendment violation in a general conception of public good that involved both the advertiser's right to speak

and the citizen's right to know. While the state here argues that the cost of advertising may increase rather than lower prices, it has presented no evidence of this, and all the evidence in the record is to the contrary. The state further argues that advertising may result in needless buying of glasses, and that this over-consumption problem was specifically ruled out of consideration by the Court in *Virginia Citizens* because of the nature of prescription drugs. To this we must answer that the mere possibility of over-consumption, which exists whenever there is advertising and which has not been shown to be an especially real or potentially harmful problem by any evidence in this case, is outweighed by the substantial benefit that the evidence shows would accrue from advertising in the form of lower prices and wider availability of services to low income groups. Finally, we do not believe that dispensing opticians, who are largely dispensers of standardized products, come within that category of professions said to present a different problem from that in *Virginia Citizens* by Chief Justice Burger's concurrence and the Court's footnote 25, wherein medicine and law were named as examples of such professions.

In sum, we believe the ban on advertising in the instant case is invalidated by the Court's negative answer to the question of:

. . . whether a State may completely suppress the dissemination of concededly truthful information about entirely lawful activity, fearful of that information's effect upon its disseminators and its recipients. *Virginia Citizens*, supra, 96 S.Ct. at 1831.

Although the provision invalidated in *Virginia Citizens* only prohibited the advertising of prices, we think that the language quoted clearly encompasses within first amendment protection the other useful kinds of information that may be the subject of truthful, legal advertising and that are forbidden by the regulatory provisions before us. In thus applying the Supreme Court's reasoning to the instant case, we stress (as did the Court) that we do not hereby find *all* restrictions on advertising

by dispensing opticians (such as reasonable regulation of its time, place, or manner) violative of the first amendment, but only its complete prohibition. Accordingly, we hold that T.C.A. § 63–1404(g), (h), and (j), and Rules 12.01, 12.02, and 12.03, promulgated thereunder by the Board of Dispensing Opticians, violate the first amendment to the United States Constitution and are therefore invalid. The judgment of the trial court is reversed and a decree will be entered in this Court in accordance with this opinion.

Reversed and rendered.

SHRIVER, P. J., and TODD, J., concur.

## APPENDIX

### RULES
### OF
### TENNESSEE
### STATE BOARD OF DISPENSING
### OPTICIANS

### CHAPTER 0480–12

### ADVERTISING

### TABLE OF CONTENTS

0480–12–.01   Prohibited as for Other Health Professions
0480–12–.02   Window Displays
0480–12–.03   Outside the State

0480–12–.01 **PROHIBITED AS FOR OTHER HEALTH PROFESSIONS.** Dispensing opticians shall adhere to the statutory prohibition against advertising to the same extent, and with the same spirit, as other health-related professions. Advertising is considered to be any visual or audio attraction designed to entice the public to do business with a particular firm as opposed to normal information services which all professional groups provide for the public. For the protection of the public, the definition of advertising will be liberally construed against the alleged advertiser. The following will not be considered advertising when done in strict compliance with these regulations:

(a) The listing of the name of the firm or dispensing optician in the "yellow pages" of the telephone directory with the exception that bold print

shall be used only for the heading of the particular specialty which shall be limited to the following terms: "optical goods"; "opticians"; "contact lenses"; "artificial eyes"; "binoculars";

(b) A news item publication announcing a new store opening provided that said news item announcement shall be limited to a picture (two inches by one inch) of the owner or store with the name and address in standard two millimeter print. The wording "new opening" shall be included in the news item which shall not list addresses of the existing stores.

(c) Signs announcing the name of the firm or dispensing optician so long as they are limited to store windows, store doors, or overhead store fronts and, further, so long as the letters are not larger than four inches by four inches (including a shadow background) and are unlighted. The name of a firm or dispensing optician may be listed in a permanent sign "directory" which lists the tenants of a building or shopping center so long as the dimensions of the letters do not exceed three inches by three inches or do not exceed the dimensions of the letters in the directory announcing the presence of other allied health professionals who are prohibited from advertising, whichever size is less.

(d) Business cards will be allowed so long as they are distributed to patients on the premises of the particular business they represent.

Authority: T.C.A. Section 63–1401. Administration History. Original Rule was certified June 7, 1974.

0480–12–.02 WINDOW DISPLAYS. Window displays, prohibited by T.C.A. Section 63–1404, are defined to be the display or presentation of optical products or signs containing pictures or prices of optical products which directly face the window or open front of a store so as to be readily perceptable to prospective customers outside the store or firm and which may reasonably be considered an inducement to trade.

Authority: T.C.A. Section 63–1401. Administrative History. Original Rule was certified June 7, 1974.

0480–12–.03 OUTSIDE THE STATE. Advertising by Tennessee Dispensing Opticians out of the state of Tennessee is strictly prohibited.

Authority: T.C.A. Section 63–1401. Administration History. Original Rule was certified June 7, 1974.