Anthony BROWNING, Appellant,

v.

Federico PAIZ and Hartford Insurance Group, Appellees.

No. 1403.

Court of Civil Appeals of Texas, Corpus Christi.

Aug. 30, 1979.

Rehearing Denied Sept. 21, 1979.

OPINION

NYE, Chief Justice.

This is a personal injury case arising out of a truck collision at an uncontrolled intersection in Tynan, Texas. Federico Paiz (appellee herein) sued Anthony Browning (appellant herein) for damages resulting from a collision between the two trucks that the parties were driving. In response to special issues, the jury found Browning's negligence was the proximate cause of the occurrence in question. The jury did not find Paiz guilty of contributory negligence. As a result of the jury findings, the trial court entered a judgment awarding Paiz damages totaling $280,500.00. The trial court's judgment also included an award of $3,250.00 to the intervenor, Hartford Insurance Group, for damages to Paiz's truck.[1] Browning appeals.

The collision in question occurred in July 1973, at the intersection of FM 796 and a cross street in Tynan, Texas. Appellant Browning was operating a 2½-ton, 3-axle bobtail truck owned by his employer, A. R. Johnson, and occupied by himself and a Kitty Johnson, the daughter of his employer. Browning was traveling in an easterly direction on a cross street. At the same time, Appellee Paiz, traveling north, approached the intersection from Browning's right on FM 796. The road Paiz was on was commonly known in Tynan as "the main highway." Paiz was alone in his truck, a 2-ton, 1972 Ford "10-wheeler." Browning entered the intersection of the cross street and FM 796 intending to proceed across the highway in an easterly direction. When the collision occurred, the trucks were at right angles to each other. Paiz's truck, unable to stop, struck the right side of Browning's truck near the rear wheels. Browning's truck traveled a short distance and rolled over, landing on its left side on the northeast corner of the intersection.

Jack K. Dahlberg, Jr., Corpus Christi, for appellant.

Wm. R. Edwards, Edwards & Perry, Corpus Christi, for appellees.

1. The Hartford Insurance Group intervened in the suit seeking subrogation of Paiz's right to recover damages to Paiz's truck which the Hartford Insurance Group had paid to Paiz. The record reflects that all parties entered into a stipulation as to the Intervenor's interest.

In response to special issues, the jury found in relevant part as follows: 1) that when Browning was approaching the intersection in question, Paiz's vehicle was approaching the intersection in such proximity as to be a hazard; 2) that Browning's failure to yield to the vehicle driven by Paiz was a proximate cause of the occurrence in question; 3) that the sum of $10,000.00 represented reasonable, necessary future medical expenses; 4) that the sum of $270,-400.00 represented a reasonable sum necessary to compensate Paiz for loss of past and future wage earning capacities, past and future physical pain, past and future mental anguish, and past and future loss of physical capacity, other than the capacity to work and earn money. The jury did not find that Paiz was contributorily negligent.

In point of error one, Appellant Browning states that the trial court erred in failing to hold that Appellee Paiz was negligent as a matter of law. The appellant contends that Paiz had a clear view of Appellant's truck at a time when he could have avoided the collision if he had taken some action. Appellant contends that the evidence establishes conclusively that Paiz did nothing to avoid the accident but "merely dropped to his seat" and that his failure to act establishes negligence as a matter of law.

■ The jury returned negative answers to the special issues which inquired whether Paiz failed to keep such a lookout as a person using ordinary care would have kept and whether Paiz was driving at a greater rate of speed than a person using ordinary care would have driven. The proximate cause issues were conditionally submitted upon affirmative answers to the negligence issues. Because Appellant did not object to such conditional submission, he has waived the jury findings upon these issues unless the evidence conclusively establishes the affirmative answer to these issues as a matter of law. *Little Rock Manufacturing Co. v. Dunn*, 148 Tex. 197, 222 S.W.2d 985 (Tex. Sup.1949). See *Strauss v. LaMark*, 366 S.W.2d 555 (Tex.Sup.1963). Therefore, in order to sustain Appellant's point of error

one, this Court must find that the evidence conclusively established, as a matter of law, that Paiz was negligent as plead (special issues 3 & 5) and that such negligence was the proximate cause of the collision (special issues 4 & 6). See Calvert, "No Evidence" and "Insufficient Evidence" points of error, 38 Texas L.Rev. 359 (1960).

■ We need not reach the second inquiry (concerning proximate cause) because we are of the opinion that there is ample evidence in the record from which the jury could reasonably conclude that Paiz was not contributorily negligent as to either of the two grounds of negligence submitted to the jury. There is ample testimony in the record, including the testimony of Browning himself, which supports the jury's negative answers to the contributory negligence special issues.

The virtually undisputed evidence established that, at the time and place of the accident in question, the lawful speed limit on FM 796 was 60 miles per hour for trucks like the one driven by Paiz. Browning was approaching the FM 796 intersection from the left-hand side of Paiz. The collision in question occurred during the daylight hours and there were no visual handicaps created by any adverse conditions. The cross road in question on which Browning was proceeding in an easterly direction, was a road used by loaded grain trucks to obtain access to a weight station.

Browning testified that, as he approached the intersection, "the only operating vehicle on FM 796 anyplace close to the intersection where this collision occurred was the truck being driven by Federico Paiz. . . ." Browning stated that there were several loaded grain trucks which were parked facing in a westerly direction along the side of the road on which he was proceeding in an easterly direction. He explained that these trucks were waiting in lines to be weighed and that there were one or two trucks on his left side (north), and four or five such trucks on his right side (south). Jo Ann Holubec, a resident of Tynan, who lived in a home near the intersection in question, testified in substance, that shortly after the

accident, she observed these trucks parked to the side of the cross road, "right up to the road FM 796." She stated that the back end of the first truck on the cross street was approximately 5 or 10 feet away from the intersection of this cross street as it crosses FM 796. Browning's passenger, Kitty Johnson, described the parked trucks as being high-sided bobtails like Browning's, with sides which were higher than the side windows on Browning's truck. She stated that she was seated approximately in the middle of the front bench seat of Browning's truck and that it was necessary for the cab of Browning's truck to pass the back of the last parked truck before it would be possible to see in a southerly direction to look for north-bound vehicles on FM 796.

Browning stated that, immediately prior to the collision in question, he had left a load of grain at the elevator and was proceeding on the cross street on his way back to the grain fields. He stated that he was traveling at about 2 to 3 miles per hour in third low gear as he passed through the area where the trucks were parked. As he "got out of the trucks," he "accelerated to approximately 5 miles an hour and then when I got to the intersection I did slow down there." He stated that he continued, without stopping, looked to his right and then to his left, and seeing nothing, entered the intersection without stopping, accelerated to approximately 8 or 9 miles per hour and then shifted gears as he continued to accelerate to a rate of speed of between 12 and 15 miles per hour at the time of the collision. Browning stated that as he slowed down just prior to the time he entered the intersection, he could have "stopped on a dime."

As Paiz was approaching the intersection, he was traveling approximately 35 to 45 miles per hour and was decelerating because, according to his testimony, he planned to pass the intersection in question and then turn right on state highway 359 toward Skidmore, Texas. Paiz saw Browning's truck when it was "2 or 3 feet on top of the road to my left, about 10 feet." He stated that, although he moved as fast as he could to get on his brakes, there was not enough time to stop before the collision occurred. Paiz's skid marks were measured by the investigating highway patrolman.

Browning testified that he saw Paiz's truck for the first time through his right window just momentarily before the collision. He stated that he had just shifted gears; his truck was located in such a position that his seat was just over the center line of FM 796; and that he continued to accelerate throughout the collision. Browning testified that the right rear wheel of his truck rolled over the front portion of the Paiz truck. This caused his vehicle to overturn.

Browning admitted in substance that: at his reduced speed (approximately 2½ miles per hour) prior to accelerating upon entry into the intersection, no one approaching the intersection in a northerly direction on FM 796 would have been able to know that he was not going to yield the right of way; that his subsequent acceleration could also have indicated a right turn to such an oncoming vehicle; that the mere fact that he accelerated would not necessarily tell another person that he planned to go straight across FM 796, rather than turn right; and that the highway patrolman who investigated the accident issued him a ticket for failing to yield the right-of-way, to which he plead guilty and paid a fine.

■ It is well settled that although a person is not bound to anticipate negligent or unlawful conduct on the part of another, he is not entitled to close his eyes to that which is plainly visible to a person of ordinary prudence similarly situated. *Lynch v. Ricketts,* 158 Tex. 487, 314 S.W.2d 273 (Tex. Sup.1958); *DeWinne v. Allen,* 154 Tex. 316, 277 S.W.2d 95 (Tex.Sup.1955); *Samford v. Duff,* 483 S.W.2d 517 (Tex.Civ.App.—Corpus Christi 1972, n. r. e.). Here there is ample evidence in the record from which the jury could reasonably conclude that Browning's action in failing to yield the right of way did not become reasonably apparent to Paiz in time for Paiz to have avoided the accident. Appellant's point of error one is hereby overruled.

■ In points of error two and three, Appellant brings forward legal sufficiency complaints by contending that there is "no evidence" in the record to support the submission of subsections (d) and (h) to the damage special issue (number 8) which allowed the jury to include as elements of damage, past and future loss of physical capacity other than wage earning capacity. These points of error do not challenge how much money the jury might have awarded for loss of physical capacity, but only contend that there is no evidence to support the submission of these elements of damage to the jury. In considering Appellant's legal sufficiency points, we, of course, must review the evidence in its most favorable light to support the submission of these elements of damage in question, considering only the evidence and inferences which support such elements and rejecting the evidence and inferences contrary to these elements. *Miller v. Riata Cadillac Co.*, 517 S.W.2d 773 (Tex.Sup.1974); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.Sup.1965).

Following this rule, we are of the opinion that these elements of damage were raised by the evidence and were properly submitted to the jury by the trial court. Paiz testified, in part, that prior to the accident in question, no part of his body kept him from getting around in any way. He stated that in the collision he hurt his leg, his neck, and his back. He testified that at the time of the trial he still continued to have trouble with his right leg and low back, and that the condition of his back does not allow him to stoop over. He testified that he can no longer drive his own truck, and that before he was injured he did things around the house, "like mow the lawn and things like that." He further stated, in effect, that although he had tried to engage in such activities, he can no longer do so now. Paiz also testified at trial, "I can't walk even by myself." In addition to Paiz's testimony, there is medical evidence concerning injuries which would contribute toward impaired physical capacity, other than the capacity to earn.

■ As a general rule, in order to be entitled to the submission, as a separate element of damage of impaired physical capacity other than the capacity to work and earn money, the plaintiff must sustain the burden of proving that the effect of his physical impairment extends beyond any impediment to his earning capacity and beyond any pain and suffering to the extent that it produces a separate and distinct loss that is substantial and for which he should be compensated. *Green v. Baldree*, 497 S.W.2d 342, 350 (Tex.Civ.App.—Houston 14th Dist.1973, no writ); See *Riley v. Normand*, 208 S.W.2d 275 (Tex.Civ.App.—El Paso 1954, no writ). Here there is some evidence of probative force in the record to support the trial court's submission, as separate elements of damage, loss of physical capacity other than capacity to work and earn money. Although we must admit that the evidence is sparse, we are of the opinion that it is sufficient to support an allowance for these elements of damage. See *Producers Chemical Co. v. McKay*, 366 S.W.2d 220, 226 (Tex.Sup.1963); *Dallas Consolidated Electric St. Ry. Co. v. Motwiller*, 101 Tex. 515, 109 S.W. 918 (Tex.Sup.1908). Appellant's points of error two and three are overruled.

In points of error four, five, and six, Appellant complains of the amount of damages ($270,400.00) the jury awarded Paiz. In point of error four, Appellant attacks that jury's award of damages on factual sufficiency grounds, and in points of error five and six, Appellant complains that such award "is so grossly excessive as to shock the conscience of the Court because the finding reflects that the jurors were influenced by bias, prejudice, or some other improper motive." Appellant requests this Court to direct a remittitur either in whole or in part, but such remittitur, should be at least in the amount of $257,900.00.

■ In considering Appellant's factual sufficiency point, we consider all of the evidence. See *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (Tex.Sup.1957). In disposing of the "remittitur" points as excessive, we consider only the evidence that is

favorable to the award. *Wharf Cat, Inc. v. Cole,* 567 S.W.2d 228 (Tex.Civ.App.—Corpus Christi 1978, n. r. e.); *Sunset Brick & Tile, Inc. v. Miles,* 430 S.W.2d 388 (Tex.Civ.App. —Corpus Christi 1968, n. r. e.). The rule is that on appeal, the findings by the jury will not be disturbed (on the ground of excessiveness) if there is any probative evidence to sustain the award. In the end, the Appellate Court should not substitute its judgment for that of the jury in absence of a rather clear showing of passion, bias or prejudice. After such a review of the evidence, and if the end result is that the award is so excessive that it shocks the conscience of the Appellate Court, remittitur would be proper. *World Oil Co. v. Hicks,* 129 Tex. 297, 103 S.W.2d 962 (Tex. Com.App.—1937, judg't adopted), reaffirmed in *Dallas Railway & Terminal Co. v. Farnsworth,* 148 Tex. 584, 227 S.W.2d 1017 (Tex.Sup.1950). *Sunset Brick & Tile, Inc. v. Miles,* supra.

The evidence indicates Paiz's disability resulted from two main conditions: 1) a chronic thrombophlebitis or "milkleg" involving the lower right extremity and 2) low back trouble. This evidence was presented primarily through the testimony of Paiz, Dr. George Barnes, and Dr. Joseph Klotz. Various medical records and x-rays were introduced into evidence to substantiate the testimony.

Paiz testified through an interpreter because he understood very little English. The occurrence in question occurred on July 23, 1973, and at the time of trial almost five years later, Paiz was forty-three years old. Paiz testified that he had completed the second grade before he left school at approximately the age of 12 or 13 to commence picking cotton. At the time of the occurrence in question, he was a "fieldman in vegetables" for Mr. Henry Berry. His job was to go out to Berry's fields to ascertain when the vegetables were ready to be picked and to see that the vegetables were being picked properly. He would then report this information to his employer's office. His job required only that he walk through the fields which were from 10 to 100 acres in size. He stated that he averaged approximately 10 to 15 working hours per day, including the time that he traveled back and forth between the fields and office. He spent about five hours per day in the fields. His job did not require that he lift vegetables since there were crew leaders who did that job. He drove Mr. Berry's pickup truck and used Berry's credit card to pay for gasoline expenses. Paiz had worked regularly for Berry for approximately nine years. He testified that Berry would have rehired him had he been able to work. For his work, Berry paid Paiz approximately $150.00 per week all year long, even though Paiz was required to work only about six or seven months per year. He stated that Mr. Berry still had people employed with him doing the job that Paiz used to do. At the time of the trial, Paiz stated that "I think that that job now is worth around $250 to $300 a week."

At the time of the accident, Paiz also operated a trucking business of his own along with his family. After the accident, he stated that he gave the trucks to his sons who have been operating the business since that time. Paiz admitted that he had been hospitalized for a previous back injury which had occurred in an accident approximately one to two years prior to the accident in question, but that he had recovered from that injury and returned to work.

As a result of the accident in question, Paiz stated that he injured his back, his neck, and his right leg in the area between his ankle and his knee. He testified that he had never had any previous trouble with that part of his right leg which was injured in this accident. At the time of trial, he testified that he was still having trouble with his right leg and his back. He stated that he had pain in his back most of the time and that the pain was worse when he was sitting down. At the time of trial, Paiz stated that he could not even walk by himself.

Paiz waited a day or two after the accident before he went to see Dr. Mead in George West, Texas, and he made only one visit to this doctor because, as Paiz ex-

plained, when he went back to see him a second time, the doctor had moved away. After going to see a doctor in Austin, Texas, Paiz went to see Dr. Hernan in Beeville, Texas. He testified that he also saw Dr. Warren Ross twice. Paiz testified that Dr. Hernan put in in the hospital in Beeville from September 4 to September 14, 1973, and that Dr. Hernan hospitalized him a second time. Paiz testified that two weeks after the accident he tried to go back to work but that he could not. He stated that although his right leg and back still gave him trouble, his neck was better.

In June of 1977, Dr. Harris hospitalized Paiz in Robstown Riverside Hospital because Paiz's leg became swollen and the skin broke apart. Paiz testified that he had not gotten better since he was released from the Robstown Hospital. His medical records were introduced into evidence, which indicated that Paiz was approximately five feet, nine inches tall, and weighed about 300 lbs. He stated that prior to the accident he was trying to lose weight and was under the care of some doctors who had prescribed diet and pills. He stated that he could not lose weight without using the pills. Dr. Krebethe's records reflected that Paiz complained that his legs were hurting in November of 1972, approximately eight months before the accident. At that time, the doctor had asked him to cut down on eating and use his diet pills.

Dr. Barnes, a Board Certified Orthopedic Surgeon, stated that he had examined Paiz on two occasions. The first examination occurred on February 22, 1974, about seven months after the accident. Based upon his initial examination and findings, Dr. Barnes testified that he diagnosed Paiz as having a grade one spondylolisthesis at the lumbosacral level which had been aggravated by the injury Paiz received in the accident in question. Dr. Barnes further stated, in effect, that a sharp list of the torso such as Paiz experienced was generally due to some mechanical derangement or misalignment in the low back or pressure to one of the nerve roots in the lower back. In Dr. Barnes' opinion, at the time of his initial examination, decompression surgery of the

L-5 nerve roots would be required. At the time his deposition was taken in 1978, Dr. Barnes testified that, in his opinion, the pitting edema of Paiz's right shin was caused by chronic thrombophlebitis, "milk leg," due to the leg injury Paiz sustained in the accident. This edema was due to an occluded blood vessel and was not due to Paiz's overweight condition, he said. Barnes testified further that if the condition were due to his being overweight, then both legs would have been swollen. In Dr. Barnes' opinion, Paiz was temporarily totally disabled as of February 22, 1974.

Paiz was re-examined by Dr. Barnes on December 9, 1977. At this time, Dr. Barnes stated that Paiz was "complaining more bitterly" of low back pain and of his difficulty in standing or walking. Dr. Barnes stated that the pain Paiz was experiencing and the edema of his right lower leg were more severe. Dr. Barnes found Paiz to be markedly obese at the time of the second examination. He stated that he took no x-rays at the time of the second examination, but that he ordered additional x-rays to be taken on March 13, 1978. Dr. Barnes discussed the x-ray findings showing Paiz's backbone and the right leg, but he testified that he had not reviewed any x-rays made on Paiz prior to the accident. A comparison of x-rays taken at about the time of the collision and those taken on or about March 13, 1978, showed that Paiz's spondylolisthesis had progressed from a grade one to a grade two.

At the time of the December 9, 1977, examination, Dr. Barnes "felt that Mr. Paiz continued to be totally and permanently disabled" and "that the chronic edema of the right leg will in time lead to a stasis ulceration of the skin of the right leg and this coupled with severe obesity" was contributing to Paiz's total disability. Based upon his two examinations of Paiz, the medical history Paiz had recited, his x-rays comparisons, and his prior experience and training, Dr. Barnes stated that, in his opinion, the additional slippage that had occurred between the two examinations was "the natural progression that can occur and often

does occur when additional stress or injury is applied to a pre-existing condition such as this spondylolisthesis or slippage." Dr. Barnes further testified that, based on reasonable medical certainty, the cause of the additional slippage Paiz experienced, was "a direct result of the blow he sustained as a result of the collision."

In Dr. Barnes' opinion, based upon reasonable medical probability, the condition of Paiz's right leg would be permanent and, that the prognosis for that leg was poor with the probability that Paiz would develop deep ulcerations of the skin over the area of edema which would then probably require tying off veins and skin grafting, and perhaps, amputation. In addition, he testified that the prognosis for Paiz's lumbar spine condition was poor. He stated that the slippage of the L–5 on the sacrum may continue to occur at a steady pace, creating more pressure on the involved nerve roots which would result in pain and the inability to work or bend, lift or stoop. Dr. Barnes thought that surgery would still probably be necessary, but that it would be very hazardous. Dr. Barnes stated that Paiz's obesity was probably glandular in origin and would require medical assistance before Paiz could lose weight. The surgery Dr. Barnes recommended would require Paiz to first lose weight. The operation itself would then involve the removal of the defective posterior element of the 5th lumbar vertebra and decompression of the nerve roots that were having traction applied to them then by the forward slippage, followed by a bone grafting procedure over the posterior and lateral elements of the 4th and 5th lumbar segments and the 1st and 2nd sacral segments. He stated, however, that even with the surgery, there were no guarantees of results, and Paiz would "continue to have a high degree of disability even with the best possible result." The parties stipulated that the U.S. Government Life Expectancy Tables showed a life expectancy of 29.9 years based on Paiz's age of 43 years at the time of trial.

From all of the evidence in the record, including the testimony of Dr. Jo- seph G. Klotz, a consulting neurologist, the jury could reasonably conclude that Paiz suffered painful and permanently disabling injuries, including total and permanent inability to return to work, as a result of the collision in question. The jury received an instruction in connection with Paiz's weight problem directing them not to consider any damages which were the result of Paiz's failure to mitigate his own damages. The jury also was instructed to consider only those damages which resulted from an aggravation of any pre-existing condition. There is ample evidence in the record from which the jury could reasonably conclude that Paiz led a normal, active life, unhampered by any pre-existing condition up until the time of the collision. Paiz had a steady work record and salary until he was disabled from injuries he received. After a careful consideration of the entire record, and recognizing that the jury is vested with considerable discretion in fixing the amount of an award, we are of the opinion that the jury's award of $270,400.00 is not against the great weight and preponderance of the evidence. Further, we are not convinced that this award is so excessive as to indicate that it was the result of passion or prejudice or other improper motive or that it was made without regard to the evidence. See *Dallas Railway & Terminal Co. v. Farnsworth*, 148 Tex. 584, 227 S.W.2d 1017, 1022 (Tex.Sup.1950). Appellant's points of error four, five, and six are overruled. See *Southern Pacific Transport Co. v. Peralez*, 546 S.W.2d 88, 97 (Tex.Civ.App.—Corpus Christi 1977, n. r. e.); *Gallegos v. Clegg*, 417 S.W.2d 347 (Tex.Civ.App.—Corpus Christi 1967, n. r. e.); *Johnston Testers v. Rangel*, 435 S.W.2d 927 (Tex.Civ.App.—San Antonio 1968, n. r. e.); *Texas Consolidated Transportation Co. v. Eubanks*, 340 S.W.2d 830 (Tex.Civ.App.—Waco 1960, n. r. e.).

In points of error eight and nine, Appellant argues legal and factual sufficiency complaints concerning the jury's award of $10,000.00 for future medical treatment. We consider these points together under the previously discussed standards announced by our Supreme Court in

*Miller v. Riata Cadillac Co.*, 517 S.W.2d 773 (Tex.Sup.1974); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.Sup.1965) (legal sufficiency); *In Re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (Tex.Sup.1957) (factual sufficiency).

Dr. Barnes was the only medical witness to testify concerning future medical expenses. Dr. Barnes testified as to the various medical procedures he considered necessary which have been summarized in our discussion of the evidence under point of error four. The specific testimony of which Appellant complains is as follows:

Q: "Based upon your experience and training as an orthopedic surgeon and your examinations of Mr. Paiz, do you have an opinion as to whether or not in the necessary care of the results of the injury he described to you as having occurred in the collision in question will require any medical care in the future in reasonable probability.

A: Yes. I feel that the patient will require further medical care because of injuries he sustained in the collision of July, 1973.

Q: And based upon reasonable medical probability, Doctor, can you estimate at today's prices the cost of what that medical care will be necessitated by the injuries described to you?

A: Well, they would be expected to run into the thousands of dollars, and really the way prices are escalating, I don't know how many it would be.

Q: Could you in reasonable probability put a minimum at today's prices of the care that you would foresee resulting from this accident in the future?

A: I would say a minimum of ten thousand."

Appellant, in several arguments, apparently contends that Dr. Barnes' testimony concerning the cost of future medical expenses is without probative force. We believe that the minimum cost of the future medical care would be reasonable. If the cost was the least amount, it is bound to be the amount that would be reasonable in law. We disagree and overrule this point of error. See *Roberts v. Tatum*, 575 S.W.2d 138 (Tex.Civ.App.—Corpus Christi 1979, n. r. e.); and *City of Houston v. Moore*, 389 S.W.2d 545, 550 (Tex.Civ.App.—Houston (1st Dist.) 1965, n. r. e.).

In point of error seven, Appellant complains that the trial court committed reversible error by "refusing to allow Appellant to perfect his Bill of Exception on Motion for New Trial." This point of error is also without merit.

Appellant is complaining of the trial court's failure, after final judgment had been entered, to allow him to take additional testimony from Paiz concerning his weight and to take pictures of Paiz so that this Court would be able to observe his physical condition. Testimony concerning Paiz's weight was introduced at trial through Paiz and medical witnesses. Apparently, Appellant made no attempt to secure pictures of Paiz through the normal pretrial discovery process. His bill of exception was not newly discovered evidence. Evidence offered on motion for new trial which was offered or available during the course of the trial will not be received or considered in the granting of a new trial. *Highlands Cable Television, Inc. v. Wong*, 547 S.W.2d 578 (Tex.Civ.App.—Austin 1977, n. r. e.); *Taxpayers Association of Lubbock v. City of Lubbock*, 565 S.W.2d 578 (Tex. Civ.App.—Amarillo 1978, no writ). Appellant admitted, during the hearing before the trial judge that there existed no rule or case law to support his request. We conclude no reversible error has been shown. Appellant's point of error seven is hereby overruled.

The judgment of the trial court is AFFIRMED.