MAHAN VOLKSWAGEN, INC., et al., Appellants,

v.

Hilda HALL, et al, Appellees.

No. 01–81–0658–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 31, 1982.

On Motion for Rehearing Dec. 30, 1982.

Arno Krebs, John Werner, Claude Treece, Houston, for appellants.

Daniel Goforth, Lorance & Thompson, Wayne Adams, Houston, for appellees.

Before EVANS, C.J., and WARREN and BASS, JJ.

## OPINION

EVANS, Chief Justice.

This is an appeal from a judgment entered on the jury's verdict in a personal injury action. The plaintiffs are the surviving mother and children of Ms. Leslie D. Head, deceased.

Shortly after midnight on June 26, 1975, Ms. Head was driving her automobile southbound on a two-lane road in Harris County. For some reason, Ms. Head's vehicle suddenly crossed to the left over the northbound lane of the road, striking a culvert, and then hitting a utility pole broadside. Ms. Head died as a result of injuries sustained in the accident.

The vehicle being driven by Ms. Head, a 1973 Hornet, had been manufactured by appellant American Motors Sales Corporation ("American Motors"), and was purchased by Ms. Head, as a used car, two days prior to the accident from one of American Motors' franchise dealers, the appellant Astro/AMC Jeep, Inc. ("Astro"). The car had originally been acquired by Astro from American Motors, and on July 23, 1973, Astro sold it as a new car to Robert Scardino, who then gave the car to his daughter, Amanda Monaghan. On April 30, 1975, Ms. Monaghan traded the car to appellant Mahan Volkswagen, Inc. (Mahan), and on June 3, 1975, Mahan wholesaled the car to D.A. Taylor Auto Sales, who sold it back to Astro on June 12, 1975.

When the car was examined after the accident, the brake system was found to be defective, but whether this defect had existed at the time the car left the manufacturer or whether it was the result of the dealer's repair work, or the decedent's own misuse, were matters of spirited controversy in the trial of the case.

In response to special issues, the jury found in favor of the plaintiffs on issues of products liability against American Motors, Astro, and Mahan, and also on negligence issues against Astro. The jury failed to find that Ms. Head had been driving her vehicle while under the influence of intoxicating liquor or that she was operating her car at an excessive rate of speed. The jury also found that Astro had failed to disclose to Ms. Head that the automobile brakes were defective, and that this failure constituted a false, misleading, or deceptive act or practice.

On the basis of the jury's verdict, the court awarded the plaintiffs $404,910.00 as actual damages against American Motors and Astro, and an additional $809,820.00 against Astro as treble damages under the Deceptive Trade Practice/Consumer Protection Act, Tex.Bus. & Comm.Code, § 17.41 et seq. The trial court also decreed that American Motors recover from Astro 40%, and that Astro recover from American Mo-

tors 60% of any amounts paid by them, respectively, in satisfaction of the judgment for actual damages. The trial court entered a take nothing judgment in favor of Mahan. Both American Motors and Astro appeal from the judgment, and the plaintiffs also appeal, claiming that a judgment should have been entered against Mahan and that the amount of damages awarded against American Motors should have been trebled.

## AMERICAN MOTORS LIABILITY

The first six points of error asserted by American Motors, the car manufacturer, challenge the legal and factual sufficiency of the evidence to support the jury's findings that the car's brake system was defective and unreasonably dangerous when it left American Motors' possession and that such defect was a producing cause of the accident. Under these points, American Motors argues that the brake system was completely changed after the car left its control, and, therefore, that the defect existing at the time of the accident could not have been present when the car left its possession. These points are overruled.

There was testimony from which the jury could have concluded that the car's brake system was defective at the time it left American Motor's possession. Amanda Monaghan testified that the first time she drove the car, the brakes pulled to the left. She said that she made at least six attempts to have Astro's service department fix the problem, but it was never able to correct the defective condition. Amanda's father, Robert Scardino, gave similar testimony.

Four expert witnesses testified regarding the condition of the brakes after the accident. All agreed that the left front brake seal leaked, allowing grease to leak on the drum and brake shoes, and that this condition could have caused the car to pull to the left when the brakes were applied. One of the experts, Lavert LaRue, testified that, in his opinion, the brake system was defective when the car came out of the factory.

American Motors contends that evidence shows that the brake system was substantially altered by Astro during its efforts to repair the defective condition, i.e., that Astro had "overturned" the right front wheel by grinding it down too thin and had replaced the brake seals, shoes and linings. Thus, it argues that because its inspection records showed no defect when the car left its possession, and since there was testimony indicating alterations of the brake system by Astro, the plaintiffs failed to meet their burden of showing that the car was defective when it left the manufacturer and that such defect was a producing cause of the accident.

■■■ A manufacturing defect may be established by circumstantial evidence. *Thiele v. Chick*, 631 S.W.2d 526 (Tex.App.— Houston [1st Dist.] 1982). Where, as in the instant case, there is a latent defect, it is unnecessary for the plaintiff to rebut by direct evidence all of the conceivable possibilities which would account for the defective condition, other than the existence of the defect at the time of sale. *Darryl v. Ford Motor Co.*, 440 S.W.2d 630 (Tex.1969).

■■ Although there was evidence from which the jury could have reached a contrary conclusion, it was entitled to infer from all the circumstances before it that the car's brakes had been defectively manufactured and that this condition existed when the car was first sold. The jury could also have inferred from the evidence that this defective condition caused the car to pull to the left when the brakes were applied, and that this was a producing cause of the accident. American Motor's first six points of error are overruled.

In its seventh and eighth points of error, American Motors contends that the evidence was legally and factually insufficient to support the jury's finding on American Motors' right to control Astro's warranty repair work on the car. In its ninth point of error, American Motors asserts that it is entitled to indemnity from Astro, since its liability may be based only upon vicarious liability for Astro's negligent repairs of the car. Because of the jury's findings against American Motors on the products liability

issues, it is liable to the plaintiffs even if it is not liable for the faulty repair work of Astro. However, we will consider the merits of its contentions under those points.

It is the position of American Motors that, because the terms of its dealer's franchise agreement with Astro specifically disclaim any agency relationship between the dealer and the manufacturer, Astro must be considered an independent contractor, and that American Motors cannot be held responsible for Astro's negligence.

■ Although the disclaimer of agency contained in the dealer-manufacturer franchise agreement does indicate the absence of an agency relationship between the manufacturer and its dealers, there was also evidence from which the jury could have concluded that American Motors had the right and the responsibility to control the details of warranty repair work done by its franchise dealers. The franchise agreement requires dealers to perform services for consumers in accordance with procedures "from time to time specified by American". Furthermore, the American Motors Buyer Protection Plan refers to an overall warranty plan between the dealer, the consumer, and American Motors, under which warranty repair work was guaranteed by American Motors through the dealership. Thus, the jury was entitled to conclude that Astro's repair work on the plaintiffs' vehicle was performed pursuant to the guaranteed requirements of performance stipulated in the Buyer Protection Plan. American Motors's seventh, eighth, and ninth points of error are, therefore, overruled.

■ American Motors' points of error fourteen, sixteen, and eighteen assert that the evidence established, as a matter of law, that the decedent failed to maintain proper control of her car, that she was driving at an unreasonable rate of speed, and that she was driving while intoxicated. In its points of error 15, 17, and 19, it contends that the jury's failure to find against the plaintiffs on such issues was against the great weight and preponderance of the evidence. The defensive issues of contributory negligence, even if answered favorably to American

Motors, would not bar a recovery based on products liability, and we need not consider American Motors' arguments with respect to those issues. Because the issue on the question of her driving while intoxicated was conditionally submitted as defensive theory of misuse, we will consider the evidence on that issue. Astro's ninth point of error also addresses this issue.

Dr. Jachimczyk, the county medical examiner, testified that he had not performed the autopsy on the deceased, but that the records of his office showed that the alcohol level in her spinal fluid was .156%, or .056% over the legal limit for intoxication. According to his testimony, the autopsy showed that the decedent had very little liquid or food in her stomach, and virtually no urine in her bladder at the time of her death. He admitted that as many as 18 autopsies may have been performed on the same day as the decedent's autopsy, and he explained the very crowded conditions in the morgue under which he and his assistants work, performing various stages of several autopsies at one time.

Ms. Joyce Lange, a friend of the decedent, testified that she had been with the decedent on the night in question and that the decedent had several drinks before she started to drive home. Ms. Lange stated her opinion that the deceased was not intoxicated.

There is no evidence showing in what manner the decedent had been operating her car on the night in question, and the testimony of the two investigating officers was limited to the physical evidence at the scene of the accident. One of the officers, who did not find any skid marks on the road, testified that he believed the decedent had fallen asleep and run off the road. The other officer, who had found skid marks and other signs of braking on the road's surface, testified that he believed she had braked while still on the road, lost control of her car when it pulled violently to the left, and ran off the road out of control.

■ The evidence on the decedent's condition and on her use of the car was contro-

verted. The jury was entitled to draw its own conclusions as to the facts in question. Therefore, contrary to American Motors' contention, the evidence did not establish, as a matter of law, the defense of misuse by the decedent, nor was the jury's response against the great weight and preponderance of the evidence. These points of error are, therefore, overruled.

■ In their second point of error, the plaintiffs assert that the trial court erred in failing to treble the damages against American Motors. They argue that the jury's findings in special issues 1, 2, and 3 amount to a finding that American Motors breached its express warranty to the decedent. The jury found that the car was defective when it left American Motors, that the defect made the car unreasonably dangerous, and that the defect was a producing cause of the occurence. However, there were no special issues submitted on breach of warranty, and there was no evidence of an express warranty made to the decedent on which to base treble damages under the Deceptive Trade Practices Act against American Motors. Special issues 1, 2, and 3 related to American Motors' strict liability, and not to any warranty allegedly given to the decedent. The plaintiffs' second point of error is denied.

## ASTRO'S LIABILITY

In response to special issues 19 and 20, the jury found that Astro failed to disclose to the decedent the fact that the car's brakes were defective, and that such failure was a false, misleading, or deceptive act or trade practice. On the basis of these findings, the trial court trebled the award of actual damages against Astro.

In its first three points of error, Astro claims that the trial court erred in submitting special issues 19 and 20 because there were neither pleadings nor evidence to support their submission, and because the jury's findings thereon were against the great weight and preponderance of the evidence. In its fourth point of error, it contends that the trial court erred in allowing plaintiffs to file a trial amendment subsequent to the submission of such issues.

The plaintiffs did allege in their pre-trial pleading that the defendants had failed to warn the decedent of the defective condition of the brakes, but this allegation was phrased only as a negligence claim. The plaintiffs also alleged in their petition a claim for treble damages under the Deceptive Trade Practices Act, but that claim was based upon the alleged breach of an implied warranty of fitness, rather than upon a failure to disclose:

Plaintiffs would further show that the Defendants, either directly or indirectly, delivered a automobile to LESLIE D. HEAD that was unfit for the purpose for which it was intended, i.e., transportation, in violation of the Deceptive Trade Practices-Consumer Protection Act of the State of Texas and, therefore, respectfully allege that all damages that they are entitled to by law, including the cost of the automobile that amounted to TWO THOUSAND SIX HUNDRED AND NINETY–FIVE DOLLARS ($2,695.00), should be tripled as provided for in said Act and that their reasonable attorney's fees should be recovered as further damages, all as provided for in said Act.

It is very questionable whether these allegations could be construed to support a claim for treble damages under the Deceptive Trade Practices Act based upon Astro's alleged failure to disclose. However, special issues 19 and 20 were submitted to the jury without objection by Astro's counsel, except upon a general form objection requested as objections "A," "B," "C," and "D," which the parties agree meant "no evidence," "insufficient evidence," "against the great weight and preponderance of the evidence", and "no pleadings."

■ Objections to a charge must be specific and distinct, *Brown v. American Transfer & Storage Co.,* 601 S.W.2d 931 (Tex.1980), and a form objection which does not specifically inform the trial court of the nature of the defect in a special issue, will not preserve error. *Monsanto Company v. Milam,* 494 S.W.2d 534 (Tex.1973). Since

Astro used a "laundry list" of objections to each of the special issues, and did not sufficiently apprise the trial court that it objected to the submission of issues 19 and 20 on the ground that the pleadings would not support a claim under the Deceptive Trade Practices Act based on a failure to disclose, that objection must be deemed waived. Tex.R.Civ.P. 274.

■ We also hold that there is evidence in the record which supports the jury's findings to special issues 19 and 20, and that the findings to such issues are not against the great weight and preponderance of the evidence.

Astro contends that the evidence shows that the decedent was completely aware of the fact that the brakes would pull to the left when she purchased the automobile, because while test-driving the car before deciding to buy it, she noticed that the brakes grabbed to the left and "were acting funny." The jury was at liberty to weigh and consider all of the evidence in light of their common experience, and the jury could have decided that the used car dealership was in a better position than the decedent to ascertain and evaluate the dangerous potential of the car's brake system. The trial court instructed the jury as follows:

FALSE, MISLEADING OR DECEPTIVE ACT OR PRACTICE. You are instructed that the term "false, misleading or deceptive act or practice" means an act or series of acts which has the capacity or tendency to deceive an average or ordinary person, even though that person may have been ignorant, unthinking or credulous. Conduct may be "false, misleading, or deceptive" even though it involves statements or representations that are literally true, if, when taken as a whole in light of the circumstances existing at the time it occurred, the conduct had the capacity or tendency to mislead. "False, misleading, or deceptive" also includes the failure to disclose information that could affect the decision to buy, or that that would cure a misunderstanding that could result from statements or representations made or from other conduct.

■ Following these instructions, the jury could have found that Astro's conduct, "when taken as a whole in light of the circumstances existing at the time it occurred," had the capacity or tendency to mislead, and that Astro's failure to disclose information about the defect could have affected the deceased's decision to buy the automobile. Thus, there was sufficient evidence to support the submission of the issues, and the jury's findings on such issues were not against the great weight and preponderance of the evidence.

Astro's points of error one through four are accordingly denied.

## APPLICABILITY OF THE DECEPTIVE TRADE PRACTICE ACT

In its fifth, sixth, and seventh points of error, Astro contends that the trial court erred in awarding treble damages against it, arguing that the Deceptive Trade Practices Act does not apply to personal injury actions, that the plaintiffs are not covered by the Act because they are not "consumers," and that there was no special issue or jury finding that Astro had breached an implied warranty of fitness. We have held that Astro waived any objection to the special issues submitted on Astro's failure to disclose, and since the jury found that Astro's failure to disclose was a deceptive act, the trial court was correct in entering a judgment as provided by the Deceptive Trade Practices Act, provided that the Act is applicable to personal injury claims and that the plaintiffs were consumers within the meaning of the Act.

■ The plaintiffs cause of action in this case arose in June, 1975, and their claim is, therefore, governed by the provisions of the Deceptive Trade Practices Act as enacted in 1973 by the 64th Legislature. See *Woods v. Littleton,* 554 S.W.2d 662 (Tex.1977). Since its enactment in 1973, the Act has been amended in every legislative session, and the legislative history of the Act indicates that, during the 1979 session of the legislature, several efforts were

made to redefine the term "actual damages" so as to eliminate personal injury cases from its scope. The legislature rejected these proposed amendments, and we are bound to consider such action as reflecting the legislature's satisfaction with the broader applicability of the term, *Smith v. Baldwin,* 611 S.W.2d 611 (Tex.1981). No matter what views of policy this court might have regarding whether a statute should or should not be given a particular application, it is not authorized to place restrictions on a statute which the legislature has previously considered and rejected. *Transportation Ins. Co. v. Maksyn,* 580 S.W.2d 334 (Tex. 1979).

We have not been referred to an opinion issued by a Texas appellate court which squarely addresses this question, but we note several cases which support the view that the Act is applicable to personal injury actions.

In *Providence Hospital v. Truly,* 611 S.W.2d 127 (Tex.Civ.App.—Waco 1981; writ dis'd) treble damages were awarded for personal injuries, although it does not appear that the question of the applicability of the statute was considered on appeal.

In *Brown v. American Transfer & Storage Co., supra,* a recovery for emotional distress under the Deceptive Trade Practices Act was disallowed, but the court's opinion indicates that personal injury damages accompanying physical injury might be allowed under the proper circumstances.

In *Avery v. Maremont Corp.,* 628 F.2d 441 (5th Cir.1980), the trial court's judgment n.o.v. for a shock absorber manufacturer was affirmed on the basis of the sufficiency of the evidence, the court noting that it was unwilling to interpret the Deceptive Trade Practices Act as allowing personal injury damages under the Act absent a clear holding to that effect by a state appellate court.

Section 17.50 of the Act provides that each consumer prevailing under the Act is entitled to have the actual damages trebled, plus court costs and reasonable attorney's fees. Since the Texas Supreme Court has held that "actual damages" under this section means all damages recoverable at common law, *Brown v. American Transfer & Storage, supra,* the trial court did not err in awarding the amount of actual damages trebled as to the appellant Astro.

Astro contends further that the plaintiffs are not "consumers" under the meaning of the act because the car was purchased by the decedent and not by the plaintiffs themselves.

Section 17.45(4) of the act defines the term "consumer" as follows:

"Consumer means an individual who seeks or acquires by purchase or lease any goods or services. (Vernon 1973)

Section 17.50(a) provides:

A consumer may maintain an action if he has been adversely affected by any of the following:

(1) an act or practice declared to be unlawful by Section 17.46;

(2) a failure by any person to comply with an express or implied warranty;

(3) any unconscionable action or course of action by any person; or

(4) the use or employment by any person of any act or practice inviolation of Article 21.21, Texas Insurance Code, as amended, or rules or regulations issued by the State Board of Insurance Code, as amended. (Vernon 1973)"

As the plaintiffs correctly point out, the decedent could have sued for damages to her car and for her personal injuries under Sec. 17.50, and her cause of action would have survived to the benefit of her children under Tex.Rev.Civ.Stat.Ann. art. 5525, which provides:

All causes of action upon which suit has been or may hereafter be brought for personal injuries, or for injuries resulting in death, whether such injuries be to the health or to the reputation, or the person of the injured party, shall not abate by reason of the death of . . . such injured person, but, . . . all such causes of action shall survive to and in favor of the heirs and legal representatives and estate of such injured party and against the person, or persons liable for such injuries and his or their legal representatives . . . .

The plaintiffs were entitled to recover for the wrongful death of the decedent under Tex.Rev.Civ.Stat.Ann. art. 4671, and Sec. 17.43 of the Deceptive Trade Practices Act makes recovery under that Act available "in addition to any other procedure or remedies provided for in any other law."

■■■ We hold that the decedent occupied the status of a "consumer" within the meaning of the Act, *Rodriquez v. Texas Employers' Ins. Ass'n*, 598 S.W.2d 677 (Tex. Civ.App.—Fort Worth 1980), and that her cause of action under the Act survived to her heirs and the legal representatives of her estate.

## THE DEFENDANTS' CLAIMS FOR INDEMNITY AND CONTRIBUTION

As stated above, the trial court entered a take nothing judgment in favor of Mahan and refused to award either American Motors or Astro contribution against Mahan. American Motors, in its thirteenth point of error, and Astro, in its eighth point of error, contend that Mahan should be required to contribute one-third of the award of actual damages pursuant to the provisions of Tex. Rev.Civ.Stat.Ann. art. 2212, which provides in pertinent part as follows:

> Any person against whom, with one or more others, a judgment is rendered in any suit on an action arising out of, or based on tort, except in causes wherein the right of contribution or of indemnity, or of recovery, over, by and between the defendants is given by statute or exists under the common law, shall, upon payment of said judgment, have a right of action against his co-defendant or co-defendants and may recover from each a sum equal to the proportion of all of the defendants named in said judgment.

Mahan argues that the trial court correctly entered a take nothing judgment in its favor because the jury failed to specify that it was responsible for any percentage of the fault, either under the theory of negligence or products liability. This contention, and the trial court's take nothing judgment, are obviously based upon the jury's finding in answer of special issue No. 29, which is as follows:

If, in answer to issues Nos. *3, 5, 9, 11, 15, 18, 22, 24, 26 and 28* you have found that more than one party was at fault on the occurrence in question and that such fault was a proximate cause or producing cause of the occurence, then answer the following issue, otherwise, do not answer this issue:

### SPECIAL ISSUE NO. 29

State the respective percentages by which the fault, if any, of each party found by you to be at fault concurred to bring about the occurrence in question.

| | | |
|---|---|---|
| a. | ASTRO AMC/JEEP, INC. | 40 % |
| b. | AMERICAN MOTORS SALES CORP. | 60 % |
| c. | MAHAN VOLKSWAGEN, INC. | 0 % |
| d. | LESLIE HEAD | 0 % |
| | TOTAL | 100 % |

You are instructed that "fault" means (a) any negligence, whether an act or omission, that is a proximate cause of the occurence in question; or (b) any conduct resulting in a defective product that is a producing cause of the occurence in question.

The percentage of fault attributable to a party is not necessarily measured by the number of acts, omissions or defects found.

■■■ Because the jury failed to find any misuse of the product on the part of the plaintiff, the scheme of comparative responsibility set forth in *General Motors Corp. v. Hopkins*, 548 S.W.2d 344 (Tex.1977), is inapplicable. Since the jury found that American Motors, Astro, and Mahan were each liable to the plaintiffs under the theory of products liability, each such defendant is liable for the full amount of actual damages found by the jury, and is entitled to one-third contribution from each of the other defendants. *General Motors Corp. v. Simmons*, 558 S.W.2d 855 (Tex.1977); *Lubbock Manufacturing Co. v. Perez*, 591 S.W.2d 907 (Tex.Civ.App.—Waco 1977); *Avery v. Maremont Corp., supra.* Under the jury's findings to the products liability issues, the jury's response to special issue No. 29 forms no basis for a judgment, and the trial court

should have disregarded that issue in rendering its judgment.

Therefore, American Motors thirteenth point of error and Astro's eighth point of error are sustained.

### REQUEST FOR REMITTITUR

Mahan asserts, in its third point of error, that the damage award is excessive and that a remittitur should be ordered.

As a general rule, a reviewing court will not interfere with a jury's determination of the amount to award as damages if there is any probative evidence to sustain the award. *Browning v. Paiz,* 586 S.W.2d 670 (Tex.Civ.App.—Corpus Christi 1979 writ ref. n.r.e.) Thus, the appellate court will not substitute its judgment for that of the jury, even if it believes the award was too great, unless the award is so excessive that it was clearly the result of the jury's passion, bias or prejudice; in which event, a remittitur may be ordered. *Browning v. Paiz, supra.* In the case at bar there is evidence to support the jury's findings on damages and the amount of the award is not so excessive as to require an order of remittitur. Mahan's third point of error is overruled.

The trial court's judgment is affirmed, except to the extent that it denies recovery to the plaintiffs against Mahan and contribution to the appellants American Motors and Astro, and in that respect the judgment is reversed and rendered; judgment is accordingly rendered that plaintiff's recover against American Motors, Astro, and Mahan, jointly and severally, actual damages in the total sum of $404,910.00, said sum to be awarded to the plaintiffs in the manner set forth in the trial court's judgment, and that each of said defendants receive contribution from each of the other defendants for one-third of said award, and it is further adjudged that plaintiffs have judgment against Astro for an additional sum of $809,820.00, representing the amount of damages to which the plaintiffs are entitled under the Deceptive Trade Practices Act, said sum to be awarded to the plaintiffs in the manner set forth in the trial court's judgment.

Costs of appeal are taxed equally against appellants American Motors, Astro, and Mahan.

### On Motion for Rehearing

All parties to the appeal have filed motions for rehearing. For the reasons stated below, we sustain in part, and in part overrule, the motions for rehearing of Astro and Mahan; and we overrule all other motions.

In our original opinion we held that the decedent occupied the status of a consumer within the meaning of § 17.45 of the Deceptive Trade Practices Act, and we further held that because her cause of action survived to the benefit of her children under Tex.Rev.Civ.Stat.Ann. art. 5525 (Vernon 1958), the plaintiffs were entitled to recover for her wrongful death under Tex.Rev.Civ. Stat.Ann. art. 4671 (Vernon Supp.1982). Therefore, we held that the plaintiffs had been properly awarded their actual damages, including damages under the wrongful death statute, and that such damages had been properly trebled under the Deceptive Trade Practices Act.

After considering the motions for rehearing, we have concluded that our prior holding was in error, insofar as it approved a treble recovery of damages under the wrongful death statute, and we hold that while the plaintiffs were entitled to recover in their own right under the wrongful death statute, that was a not cause of action which survived to them under the provisions of article 5525. Thus, we have concluded that only those elements of damages which are attributable to the decedent's cause of action, i.e. damages for physical pain and mental anguish, funeral expenses, and property damage, would have survived to her heirs and legal representatives under the provisions of article 5525. As the appellants correctly point out, since there was no evidence of physical pain and mental anguish, the only damages which were properly trebled are the decedent's funeral expenses and automobile damages in the aggregate amount of $4,910. Accordingly, we modify our original judgment to treble only that amount.

We have also concluded that Mahan is entitled to full indemnity from General Motors and Astro because its liability to the plaintiffs was grounded solely upon strict liability by reason of its status as a seller/distributor in the chain of distribution from the manufacturor to the consumer. The jury found that the vehicle in question had been defectively manufactured, and there was no evidence that Mahan had altered the vehicle before distributing it to the consumer or that Mahan had violated any duties to American Motors or Astro which would have precluded its right to indemnification. Accordingly, Mahan's liability for the judgment rendered is derivative through American Motors and Astro, and Mahan is therefore entitled to full indemnity from each of them. Tex.Rev.Civ. Stat.Ann. art. 2212 (Vernon 1971); *Thiele v. Chick*, 631 S.W.2d 526 (Tex.App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.).

The judgment set forth in our original opinion issued August 31, 1982 is withdrawn, and in lieu thereof the following judgment is filed:

The trial court's judgment is affirmed, except to the extent that it denies recovery to the plaintiffs against Mahan, and awards the plaintiffs a trebled sum of all damages against Astro, and in that respect the judgment is reversed and judgment is rendered in favor of the plaintiffs against American Motors, Astro and Mahan, jointly and severally, for their actual damages in the total sum of $404,910, and that the plaintiffs also have judgment against Astro for the sum of $14,730, representing the amount of treble damages to which the plaintiffs are entitled under the Deceptive Trade Practices Act, all such damages to be awarded to the plaintiffs in the manner set forth in the trial court's judgment; and it is further ordered that Mahan is entitled to indemnification from American Motors and Astro for the damages awarded to the plaintiffs against it as hereinabove provided, and that American Motors and Astro, respectively, are entitled to contribution, each from the other, for one-half of the actual damages awarded to the plaintiffs in the total sum of $404,910.

Costs of appeal are taxed equally against American Motors and Astro.