Joseph J. LaBELLA, Appellant,

v.

CHARLIE THOMAS, INC. and Mercedes–Benz of North America, Inc., Appellees.

No. 07–96–0338–CV.

Court of Appeals of Texas, Amarillo.

March 12, 1997.

Rehearing Overruled April 10, 1997.

Matthew J.M. Prebeg, Arthur M. Glover, Jr., Glover, Anderson, Chandler & Uzick, Houston, for appellant.

John Zavitsanos, Ahmad & Zavitsanos, Houston, for appellees.

Before BOYD, C.J., and QUINN and REAVIS, JJ.

BOYD, Chief Justice.

In three points of error, appellant Joseph J. LaBella attacks a summary judgment rendered in favor of appellees Charlie Thomas, Inc., d/b/a Intercontinental Motors (Intercontinental), and Mercedes–Benz of North America, Inc. (Mercedes–Benz) by the 190th District Court of Harris County. In those points, appellant contends (1) both appellees were required to honor implied warranties,

(2) both appellees had a duty to exercise ordinary care and to maintain a safe environment for customers, and (3) he provided "ample summary judgment evidence to controvert" any of appellees' summary judgment evidence on all causes of action. We reverse and remand.

The undisputed facts of this case are that LaBella leased a 1992 Mercedes–Benz from Intercontinental in October 1991. The lease term was for sixty months.[1] On March 3, 1993, the car stalled at a stop light and "ran a little rough." Appellant drove the car to Intercontinental's place of business where mechanics disassembled the car's engine to determine if the repairs would be warrantable. The car had approximately 44,120 miles on it, and the Mercedes–Benz limited warranty covered the vehicle for 48 months or 50,000 miles, whichever came first. Intercontinental discovered that certain valves were bent, diagnosed the problem as resulting from "misuse," and declined coverage under the warranty. When appellant refused to pay $514.44 in cash for the "tear down" work, Intercontinental placed the engine parts in the trunk of the car and would not release the car to appellant. Appellant contends that when he went to Intercontinental to discuss the problem, he was "verbally and physically assaulted" when its employees "push(ed) him out the door ... before he could obtain physical possession of his car." Appellant eventually paid cash to have the car released, then took the car to K & H Autohous where the valves were repaired.

Appellant filed suit, alleging breaches of express and implied warranties, violations of the Deceptive Trade Practices Act[2] (DTPA) and negligence. Appellees moved for summary judgment on the grounds that (1) Intercontinental did not issue appellant a warranty, (2) Mercedes–Benz disclaimed any implied warranties, (3) Mercedes–Benz did not breach its limited warranty, (4) Intercontinental had the absolute right to dictate the terms by which payment is made, (5) Mercedes–Benz was entitled to judgment as

a matter of law on the negligence claims because it owed appellant no duty and breached no duty, and (6) appellant was not assaulted. In the summary judgment order, the trial court merely stated that appellant's claims against both appellees were dismissed with prejudice.

In order for a defendant to be entitled to summary judgment, he must disprove, as a matter of law, at least one of the essential elements of each of the plaintiff's causes of action, *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991), or must establish one or more defenses as a matter of law. *Bryant v. Gulf Oil Corp.,* 694 S.W.2d 443, 445 (Tex.App.—Amarillo 1985, writ ref'd n.r.e.). If the trial court does not specify the ground upon which it based its ruling, as the court in this case, the summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989).

In a summary judgment proceeding, the movant has the burden of showing there is no genuine issue of material fact and he is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management,* 690 S.W.2d 546, 548 (Tex.1985). In determining whether there is a disputed material fact issue that precludes summary judgment, evidence favorable to the non-movant will be taken as true. *Id.* at 548–49. Every reasonable inference must be indulged in favor of the non-movant, and any doubts must be resolved in his favor. *Id.* at 549.

One may not be granted judgment as a matter of law on a cause of action not addressed in a summary judgment proceeding. *Chessher v. Southwestern Bell Telephone Co.,* 658 S.W.2d 563, 564 (Tex.1983). Furthermore, Texas summary judgment practice is such that the burden of proof is never shifted to the non-movant unless and until the movant has established its entitlement to a summary judgment on the issues "expressly presented to the trial court by conclusively proving all essential elements of [its] cause of action or defense as a matter of law." *Casso v. Brand,* 776 S.W.2d 551, 556 (Tex.1989),

---

1. This information is from the briefs submitted by the parties, as we are unable to find in the record the terms of the purported lease.

2. Tex. Bus. & Com.Code Ann. § 17.01 et seq.

*citing City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 n. 5 (Tex. 1979).

In his first point of error, appellant addresses implied warranties. In his original petition, appellant alleged that both appellees impliedly warranted that the car he leased was "merchantable and fit for the ordinary purposes for which it was being sold" to him. He also alleged that appellees breached sections 17.46 and 17.50 of the DTPA when they refused to make or authorize the "necessary repairs," thereby engaging in conduct that was "false, misleading and deceptive...." In response, appellees contend they effectively disclaimed the implied warranty of merchantability.

### Implied Warranty of Merchantability

In this first point of error, appellant contends that the language used by appellees does not disclaim the implied warranty of merchantability because "it does not mention the word merchantability, and on its face, applies only to the 'purchase' of a passenger car, not a leased car." Appellant cites no authority in support of this particular proposition.

In describing the "lease" in their briefs, both parties refer to a copy of a certain document in the record. Our review of this document reveals several references to "purchaser" and "products sold," but only one reference to any kind of "lease." That reference is in the section of the document entitled "cash price of the vehicle," where the words "LESSOR: MERCEDES BENZ CREDIT CORP" appear. However, because both parties treat this document/transaction as a lease and present no issue whether the car was sold or leased,[3] we will treat the document/transaction as a lease. *See Harris v. Rowe,* 593 S.W.2d 303, 306 (Tex.1979).

Section 2.102 of the Texas Business and Commerce Code provides that unless the context otherwise requires, Chapter 2 of the Code applies to "transactions in goods...." Tex. Bus. & Com.Code § 2.102 (Vernon 1994). However, section 2.314, which articulates the implied warranty of merchantability provides that unless excluded or modified, a warranty that the goods shall be merchantable is "implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Tex. Bus. & Com.Code § 2.102 (Vernon 1994). However, as we have noted, the parties in this case agree this car was not sold but was leased to appellant.[4] Although chapter 2A of the Code provides a similar warranty of merchantability in § 2A.212 as to leases, it did not take effect until September 1, 1993, some two years after the parties entered into this lease agreement. Acts 1993, 73rd Leg., ch. 570, § 17. Thus, it appears this transaction would be governed by common law warranties of merchantability.

An implied warranty is a representation or promise by a seller/lessor as to the quality or suitability of the property sold/ leased which the law implies, infers or presumes and imports into a contract in view of all the facts and circumstances attending the transaction, including the nature of the property, the terms of the agreement, and trade usages. *See Donelson v. Fairmont Foods Co.,* 252 S.W.2d 796, 799 (Tex.Civ.App.— Waco 1952, writ ref'd n.r.e.). Because appellees contend they disclaimed this warranty, we must examine the record to determine if it is sufficient to show any implied warranty was excluded or modified as a matter of law.

Appellees contend that the only warranty given to appellant was the Mercedes–Benz limited warranty found in the owner's manual and Intercontinental not only did not issue a warranty to appellant, but it expressly disclaimed all express or implied warranties. To support this argument, they point to language found in the alleged lease.

The Texas Business and Commerce Code provides that to exclude or modify the

---

3. Attorneys for all parties stated during oral arguments that there is no dispute about whether this transaction involved a lease.

4. Prior to the enactment of Chapter 2A, Texas courts consistently refused to apply the warranty provisions of Chapter 2 to lease transactions. *U.S. Armament Corp. v. Charlie Thomas Leasing Co.,* 661 S.W.2d 197, 200 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e).

implied warranty of merchantability or any part of it in either a sale or lease of goods, the language must mention merchantability, and if in writing, must be conspicuous. Tex. Bus. & Com.Code Ann. §§ 2.316(b), 2A.214(b) (Vernon 1994). The objective of this conspicuousness requirement is to protect the buyer from surprise and an unknowing waiver of his or her rights. *Cate v. Dover Corp.*, 790 S.W.2d 559, 561 (Tex.1990).

Whether a particular disclaimer is conspicuous is a question of law. *Id.* at 560; Tex. Bus. & Com.Code Ann. § 1.201(10) (Vernon 1994). In making its decision, a court is to be guided by the definition of "conspicuous" found in the code: "A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it." Tex. Bus. & Com.Code Ann. § 1.201(10) (Vernon 1994). Section 1.201(10) goes on to provide that a printed heading in capital letters or language in the body of a form that is larger or in other contrasting type or color is considered conspicuous.

■ However, with the comment that "[W]hen the buyer is not surprised by the disclaimer, insisting on compliance with the conspicuousness requirement serves no purpose," the *Cate* court held that whether a disclaimer is conspicuous is immaterial when the buyer has actual knowledge of the disclaimer. *Cate*, 790 S.W.2d at 561–62. Thus, the extent of a buyer's knowledge of a disclaimer of the implied warranty of merchantability is clearly relevant to a determination of its enforceability, and the seller has the burden of proving the disclaimer was sufficient to meet the "conspicuousness" requirement or that the buyer had actual knowledge of the disclaimer. *Id.*

### Disclaimers by Intercontinental

In the middle of the first page of this lease appear the words:

ANY WARRANTIES ON THE PRODUCTS *SOLD* HEREBY ARE THOSE MADE BY THE MANUFACTURER. THE *SELLER*, INTERCONTINENTAL MOTORS, HEREBY EXPRESSLY DISCLAIMS ALL WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND INTERCONTINENTAL MOTORS NEITHER ASSUMES NOR AUTHORIZES ANY OTHER PERSON TO ASSUME FOR IT ANY LIABILITY IN CONNECTION WITH THE *SALE* OF SAID PRODUCTS.

(emphasis ours).

The second page of the document, entitled "Additional Terms and Conditions," consists of ten separate paragraphs. Paragraph eight provides:

ALL WARRANTIES, IF ANY, BY A MANUFACTURER OR SUPPLIER OTHER THAN DEALER ARE THEIRS, NOT DEALER'S, AND ONLY SUCH MANUFACTURER OR OTHER SUPPLIER SHALL BE LIABLE FOR PERFORMANCE UNDER SUCH WARRANTIES, UNLESS DEALER FURNISHES BUYER WITH A SEPARATE WRITTEN WARRANTY OR SERVICE CONTRACT MADE BY DEALER ON ITS OWN BEHALF. DEALER HEREBY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE: (A) ON ALL GOODS AND SERVICES *SOLD* BY DEALER, AND (B) ON ALL USED VEHICLES WHICH ARE HEREBY SOLD "AS IS—NOT EXPRESSLY WARRANTED OR GUARANTEED."

(emphasis ours).

### Disclaimers by Mercedes–Benz

In the copy of the "Owner's Service and Warranty Information—1992" attached to appellees' motion for summary judgment, Mercedes–Benz provided that "any authorized Mercedes–Benz Dealer will make any repairs or replacements necessary, to correct defects in material or workmanship." The warranty repairs and adjustments were to be made "at no charge for parts or labor, except for the battery...." On page 15 of the document, was the information that:

EXCEPT FOR THE EMISSION SYSTEMS WARRANTIES, THIS IS THE ONLY WARRANTY GIVEN WITH THE *PURCHASE* OF A MERCEDES–BENZ PASSENGER CAR. ANY WARRANTIES IMPLIED BY LAW ARE LIMITED TO 48 MONTHS OR 50,000 MILES FROM THE DATE OF INITIAL OPERATION, WHICHEVER EVENT SHALL FIRST OCCUR.

In a section entitled "Items Which Are Not Covered" found on what appears to be page 16 of the manual, Mercedes–Benz listed "Accidents or damage from objects striking the car. Misuse of the car such as driving over curbs, overloading, improper operation, storage or transport. (Proper use is described in the Owner's Manual.)" The subject of "misuse" was also addressed in a section entitled "This Warranty Does Not Cover."

On page 27 is yet another disclaimer in bold type which provides:

**Except for the Emission Control Warranty, this warranty and the Limited Warranty for new Mercedes–Benz vehicles are expressly in lieu of all other warranties and representation. Expressed or implied, including, but not limited to, implied warranty of merchantability or fitness for a particular purpose, and of all other obligations or liabilities on the part of the warrantor. * * ***

■ These modifications and exclusions of warranty by Intercontinental and Mercedes–Benz are sufficiently "conspicuous" to meet the legal requirements in case of a sale. However, because the parties are agreed that the transaction in question was a lease rather than a sale, this determination does not end our inquiry into their applicability in this case.

Intercontinental relies upon a disclaimer of "products sold" by Mercedes–Benz that describes Intercontinental as a "seller." Mercedes–Benz relies on a disclaimer that describes a limited warranty as "THE ONLY WARRANTY GIVEN WITH THE PUR-

CHASE" of a Mercedes–Benz automobile. However, Darryl Eckert, the service manager at Intercontinental, avers in his affidavit that Intercontinental made no warranties to appellant in connection "with the lease."

In *Bowe v. GMC/Pontiac Div.*, 830 S.W.2d 775 (Tex.App.—Houston [1st Dist.] 1992, writ denied), the court faced a somewhat analogous question. Bowe filed suit alleging a breach of implied warranty to repair his car in a good and workmanlike manner. In the course of its discussion of the appeal, as relevant here, the court examined the disclaimer of warranties in the sale contract for the purchase of the car and noted that, in pertinent part, it expressly provided that the dealer "neither assumes nor authorizes any other person to assume for it any liability in connection with the *sale of the product.*" *Id.* at 779. (emphasis in original).

The court held that the repair services about which Bowe complained were the *sale of services,* while the disclaimer in the purchase contract disclaimed only those warranties connected with the *sale of goods.* Thus, the court noted, the disclaimer did not disclaim warranties involved in the repair services the dealer sold Bowe after he purchased the car, and summary judgment based on the disclaimer was improper.[5] *Id.* We review the wording of the disclaimers in the instant case with this kind of scrutiny.

■ We hold that while the disclaimers relied upon by Intercontinental and Mercedes–Benz may be sufficiently conspicuous as a matter of law in a sale transaction, there is a fact question whether these disclaimers, which clearly refer to a sale of a vehicle, effectively disclaimed all implied warranties, including the implied warranty of merchantability, when the car was leased. Because the disclaimers refer to the "purchase" or "sale" of a car in what is considered by both parties to be a lease transaction, the extent of the lessee's knowledge of the disclaimers insofar as they relate to a lease transaction is relevant to the determination of their enforceability. There is no such proof in the record. Therefore, there is a fact question as to

5. The *Bowe* court went on to note that the supreme court has held warranties that repair services be done in a good and workmanlike man-

ner cannot be disclaimed. 830 S.W.2d at 779, *citing Melody Home Mfg. Co. v. Barnes,* 741 S.W.2d 349, 355 (Tex.1987).

whether the disclaimers provided by appellees, which clearly refer to the *sale* of a vehicle, were sufficient to provide appellant, as lessee, with the required notice of the disclaimer of all implied warranties.

### The DTPA Claim

■ Appellant also addresses the DTPA claim in his first point of error. In their motion for summary judgment, appellees argued that appellant was not a "consumer" under the DTPA because he was accusing them of refusing to accept anything but cash for the charges incurred in diagnosing the valve problem. While appellant does make this allegation in his original petition,[6] he also alleges that appellees refused to make or authorize necessary repairs, which conduct he alleges is "false, misleading and deceptive" pursuant to sections 17.46 and 17.50 of the DTPA.

■ The elements of a DTPA action are: (1) the plaintiff is a consumer, (2) the defendant(s) engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex.1995); Tex. Bus. & Com.Code § 17.50(a)(1). A consumer is defined as "an individual ... who seeks or acquires by purchase or lease, any goods or services...." Tex. Bus. & Com.Code § 17.45 (Vernon 1987).

■ Because this is a transaction in goods or services, any person that engages in an unconscionable course of action which adversely affects a consumer is subject to liability under the DTPA. *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705, 707 (Tex. 1983). The court in *D/FW Commercial Roofing Co., Inc. v. Mehra*, 854 S.W.2d 182 (Tex.App.—Dallas 1993, no writ) went so far as to say that as a practical matter, once a plaintiff has established that he is a consum-

er, he can sue almost anyone. *Id.* at 185. We find that appellant fits within the Code definition of a consumer and had standing to bring this lawsuit.

■ Appellees also argued in their motion for summary judgment that appellant cannot establish any actual damages as required by section 17.50 [7] of the DTPA because he would have "incurred $514.44 for the work performed" to determine whether the malfunction was covered by warranty. However, Eckert stated in his deposition that nowhere in the owner's manual is it expressly stated that appellant was obligated to pay for the work needed to determine whether or not his claim should be granted or denied. Thus, it appears that whether appellant was obligated to pay for this investigatory work, and whether he can establish these as damages under section 17.50 of the DTPA, are fact questions.

■ Appellant relies on *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349 (Tex. 1987) for the proposition that the implied warranty to repair or modify existing tangible goods or property in a good and workmanlike manner is available to a consumer suing under the DTPA. In response, appellees cite *Dallas Power & Light v. Westinghouse Elec. Corp.*, 855 F.2d 203 (5th Cir. 1988), in which the court made a distinction between a situation where someone undertakes to repair and fails to perform in a workmanlike manner, and a situation where someone has a duty to make repairs and fails to do so. In doing so, the court held the latter situation was merely a reiteration of a breach of contract and negligent failure to maintain a cause of action, and was not itself a viable cause of action. *Id.* at 208. Although appellees contend the instant case falls in this latter category, we disagree.

---

6. We note that at oral arguments on this case, appellant stated that he makes no complaint about failure to extend him credit.

7. In pertinent part, section 17.50 provides:
 (a) A consumer may maintain an action where any of the following constitute a producing cause of actual damages:

(1) the use or employment by any person of a false, misleading, or deceptive act or practice that is specifically enumerated in a subdivision of Subsection (b) of Section 17.46 of this subchapter;
(2) breach of an express or implied warranty;

Tex. Bus. & Com.Code § 17.50 (Vernon 1987).

The plaintiffs in the *Melody Home* case discovered after moving into their modular prefabricated home that a sink was not connected to the drain in one of the interior walls. Workmen from Melody Home twice tried to repair the problem, but their efforts were unsatisfactory and additional damages were caused by the repair. The supreme court held that an implied warranty to repair or modify existing tangible goods or property in a good and workmanlike manner [8] is available to consumers suing under the DTPA. The court then went on to say that repairmen are not required to guarantee the results of their work, but are required to repair or modify existing goods in this good and workmanlike manner. *Id.* at 355.

A car is an existing tangible good. *See* Tex. Bus. & Com.Code Ann. § 2.105(a) (Vernon 1994). Appellant took his car to Intercontinental for repairs. A mechanic at Intercontinental disassembled a portion of the engine by removing the cylinder head. According to Frank Oswald, Field Service Manager for Mercedes–Benz, "the valve repair work was actually started by tearing down the engine to make the diagnosis." After determining that the bent valves were the result of misuse, the service manager denied warranty coverage and told appellant he would have to pay for the work up until that point. When appellant refused to pay in cash, the service manager directed the mechanic to put the disassembled parts in the trunk of the car.

We find that these acts constitute the beginning of the repair process. Repairs were undertaken, but not completed; therefore, appellant's allegation that they were not performed in a good and workmanlike manner is actionable under the DTPA. The facts before us are nearly akin to those before the court in *Melody Home*, making the rule explicated in that case applicable. *See also Archibald v. Act III Arabians*, 755 S.W.2d 84, 86 (Tex. 1988) (horse training services fall within the scope of the implied warranty of good and workmanlike performance recognized in *Mel-*ody Home* because horse training involves the modification of an existing tangible good).

Under the standards by which we must review a summary judgment proceeding, we find that appellees, as movants, failed to establish as a matter of law that (1) they disclaimed all implied warranties, (2) appellant was not a consumer under the DTPA, and (3) appellant's cause of action does not fall under the implied warranty to repair or modify existing tangible goods or property in a good and workmanlike manner as articulated in *Melody Home*. Appellant's first point of error is sustained.

In his second point of error, appellant addresses negligence issues, contending both Intercontinental and Mercedes–Benz had duties to exercise ordinary care and to maintain a safe environment for customers. More specifically, appellant alleged in his original petition that Mercedes–Benz was negligent for failing to "adequately train and/or supervise Defendant, **Charlie Thomas, Inc.**, its franchisee and/or dealership, of the proper procedures for rendering sales, lease, maintenance and repair services to customers." (emphasis in original). He also alleged that Intercontinental was negligent in its (1) hiring, training and supervising of employees by allowing employees to make intentional and/or negligent misrepresentations, to assault him, and to negligently or intentionally cause mental anguish to him; and (2) rendering of services pursuant to its contract with him. The thrust of appellees' motion for summary judgment in this regard was (1) Mercedes–Benz owed appellant no duty, (2) Mercedes–Benz breached no duty to supervise, and (3) there was no assault.

In a negligence cause of action, a plaintiff must produce evidence of a duty, a breach of that duty, proximate cause, and damages. *Colvin v. Red Steel Co.*, 682 S.W.2d 243, 245 (Tex.1984). Thus, the threshold question in a negligence case is that of duty, which is a question of law. *Salinas v. General Motors Corp.*, 857 S.W.2d 944, 947 (Tex.App.—Houston [1st Dist.] 1993,

---

8. "Good and workmanlike" are defined as "that quality of work performed by one who has the knowledge, training, or experience necessary for the successful practice of a trade or occupation and performed in a manner generally considered proficient by those capable of judging such work." *Melody Home*, 741 S.W.2d at 354.

no writ), *citing Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990).

### Negligence of Mercedes–Benz

▆ A dealer is not per se an agent of the manufacturer. *Gabaldon v. General Motors Corp.*, 876 S.W.2d 367, 369 (Tex.App.— El Paso 1993, no writ). For example, a retailer or wholesaler is not such an agent or representative of a manufacturer as to bind the manufacturer contractually. *Pioneer Hi–Bred Int'l Inc. v. Talley*, 493 S.W.2d 602, 605 (Tex.Civ.App.—Amarillo 1973, no writ). The nature of the relationship is determined by the terms of the dealership agreement. *Gabaldon*, 876 S.W.2d at 369, *citing General Motors Corporation v. Washington*, 559 S.W.2d 425 (Tex.Civ.App.—Texarkana 1977, no writ).

▆ In response to appellant's allegation that Mercedes–Benz failed to adequately train or supervise Intercontinental employees, Mercedes–Benz contends it had no relationship with appellant out of which such legal duties could arise. Opposing that argument, appellant contends MercedesBenz itself has produced evidence that "Intercontinental was under the control and supervision of Mercedes–Benz." The document on which both parties rely in making these statements is entitled "Mercedes–Benz Passenger Car Dealer Agreement Standard Provisions." It contains a paragraph which provides:

> The relationship between MBNA and Dealer, during the term of this Agreement, shall be that of vendor and vendee, and, as to the DBAG trademarks, that of sublicensor and sublicensee, and, as to the warranty, that of Warrantor and Warrantor's Representative for the performance of warranty service. Dealer is not the agent of DBAG or MBNA for any purpose whatsoever and is not granted, by the terms or execution of this Agreement or otherwise, any express or implied right or authority to assume or create any obligation or responsibility on behalf of, or in the name of, DBAG or MBNA or to bind DBAG or MBNA in any manner or thing whatsoever.

In support of their position, appellees contend that Intercontinental was not the agent of Mercedes–Benz and, because there was no employer-employee relationship, Mercedes–Benz could not control Intercontinental's actions. A similar argument was made by the defendants in *Mahan Volkswagen, Inc. v. Hall*, 648 S.W.2d 324 (Tex.App.—Houston [1st Dist.] 1982, writ ref'd n.r.e). In that case, the court held that, although the disclaimer of agency contained in the dealer-manufacturer franchise agreement indicated the absence of an agency relationship between them, there was sufficient evidence from which the jury could have concluded that the manufacturer had the right and responsibility to control the details of warranty repair work done by its franchise dealers. Id. at 329. En route to that decision, the court noted that the franchise agreement required dealers to perform service for consumers in accordance with procedures "from time to time specified by [the manufacturer]," and that a "Buyer Protection Plan" referred to an overall warranty plan between the dealer, the consumer and the manufacturer under which warranty repair work was guaranteed by the manufacturer through the dealership. *Id.*

The facts are similar in this case. The retail agreement stated that each car or part installed or supplied would be warranted by Mercedes–Benz in accordance with the "Claims Policies and Procedures Manual" for Mercedes–Benz passenger cars. Each dealer was to deliver to each "retail purchaser" of a new Mercedes–Benz car a warranty, and was to explain its provisions at or before the time of the sale. The dealer, as the warrantor's representative, was then required to perform all warranty obligations in accordance with the before-mentioned manual, being held "responsible for the quality and effectiveness of the warranty service performed by Dealer."

The record before us shows that Intercontinental employee Bert Silvera disassembled the car's engine, and at the direction of a service adviser, another Intercontinental employee, placed the parts in the trunk. At appellees' own admission, Silvera had "attended numerous Mercedes–Benz training

classes." Service Manager and Intercontinental employee Darryl Eckert averred that he and Silvera referred to a Mercedes–Benz technical bulletin to determine whether the damage was caused by misuse. He also averred that as an "authorized Mercedes–Benz dealer, we have an affirmative duty to diagnose whether a particular repair is warrantable," but the ultimate decision on whether a repair is warrantable "rests with Mercedes–Benz." Thus, the ultimate decision to deny warranty coverage was made by Mercedes–Benz Technical Specialist Paul Renick, after both Renick and Mercedes–Benz Field Service Manager Frank Oswald inspected the engine.

In sum, we find there is evidence in this summary judgment record from which a jury could conclude that Mercedes–Benz had the right and responsibility to control the details of warranty repair work done by Intercontinental. Mercedes–Benz has failed to prove as a matter of law that it had no duty in this regard.

### Negligence of Intercontinental

The theory of responsibility under the doctrine of negligent hiring [9] is the master's negligence in employing an incompetent servant whom the master knows or by the exercise or reasonable care should have known was incompetent or unfit, thereby creating an unreasonable risk of harm to others. *Estate of Arrington v. Fields*, 578 S.W.2d 173, 178 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.). Texas courts have long recognized a master's duty to make inquiry into the competence and qualifications of those he considers for employment. *Id.* This is a duty owed by the master to his other servants as well as to the public. *Id.* Thus, the tort of negligent hiring is an exception to the general rule that a person does not have a duty to protect another person from the conduct of a third person. *Doe v. Boys Clubs of Greater Dallas*, 868 S.W.2d at 950, *aff'd*, 907 S.W.2d at 472.

To impose liability for negligent hiring, there must be evidence that the plaintiff's injuries were brought about by reason of the employment of the incompetent servant. *Dieter v. Baker Service Tools*, 739 S.W.2d 405, 408 (Tex.App.—Corpus Christi 1987, writ denied). In other words, the negligence in hiring must be the proximate cause of the injuries to the plaintiff. *Id.* If this connection was not required, an employer would essentially be an insurer of the safety of every person who happens to come into contact with its employee simply because of the employee status. *Id.*

Appellant specifically alleged that Intercontinental was negligent in "their hiring, training, and supervising of employees by allowing their employees to, among other things, make intentional and/or negligent misrepresentations to Plaintiff, to assault Plaintiff, and to negligently or intentionally cause mental anguish to Plaintiff." Our review of the record reveals that appellee Intercontinental failed to address the negligent hiring issues raised by appellant in its motion for summary judgment. The motion does contain assertions that Mercedes–Benz had no duty and breached no duty to train and supervise, but makes no similar assertions with respect to the negligence allegations made against Intercontinental. Besides the assertion that appellant was never assaulted and that he failed to offer sufficient evidence that he was assaulted, the only attempt to address this issue appears in "Defendants' Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment," in which Intercontinental states "Plaintiff has offered absolutely no evidence, nor has otherwise pled, that Intercontinental had any reason to believe that its employees' proclivities were such that they would assault one of their customers."

---

**9.** A claim of negligent hiring is based on a defendant's direct negligence rather than the defendant's vicarious liability for the torts of its workers. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 868 S.W.2d 942, 950 (Tex.App.—Amarillo 1994), *aff'd*, 907 S.W.2d 472 (Tex.1995). The tort of negligent hiring addresses the risk created by exposing the public to a potentially dangerous individual, while the doctrine of respondeat superior is based on the theory that the employee is the employer's agent. *Akins v. Estes*, 888 S.W.2d 35, 42 (Tex.App.—Amarillo 1994), *aff'd and rev'd in part*, *Golden Spread Council, Inc. v. Akins*, 926 S.W.2d 287 (Tex.1996).

Moreover, even assuming arguendo the reply allegations were sufficient to seek summary judgment on the question, Intercontinental failed to fulfill its summary judgment burden to present competent summary judgment evidence sufficient to disprove, as a matter of law, the negligent hiring, training and supervision allegations. That being true, the judgment granted by the trial court granted more relief than requested, and must be reversed and remanded. *See Maffrige v. Ross*, 866 S.W.2d 590, 592 (Tex.1993). In sum, appellant's second point of error is sustained.

In his third point of error, appellant contends he provided "ample summary judgment evidence to controvert any of defendants' summary judgment evidence on all causes of action." Because we have sustained appellant's first and second points regarding warranties, method of payment and negligence as raised in the motion for summary judgment, we need only address the remaining assault issue raised in this point of error.

 The definition of assault is the same in both civil and criminal law. *Price v. Short*, 931 S.W.2d 677, 687 (Tex.App.—Dallas 1996, n.w.h.), *citing Texas Bus Lines v. Anderson*, 233 S.W.2d 961, 964 (Tex.Civ.App.—Galveston 1950, writ ref'd n.r.e.). The Penal Code defines assault as:

(a) A person commits an offense if the person:

(1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;

(2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or

(3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

Tex. Penal Code Ann. § 22.01 (Vernon 1994). Further, words alone do not constitute an assault. *Cox v. State*, 156 Tex.Crim. 444, 242 S.W.2d 369, 370 (1951).

 The evidence in the record regarding what actually happened when appellant was "assaulted" is found in LaBella's deposition testimony. He testified that a service manager threw a credit card at him, then "threw" him out or "physically escorted" him from the business. In affidavit testimony, appellant simply averred he was "verbally and physically assaulted." The Intercontinental and Mercedes–Benz employees who were deposed or signed affidavits stated that nothing like this happened.

Reviewing the record in the light by which we must do so, we find appellees have failed to prove as a matter of law that appellant was not assaulted. Although legal conclusions and opinions in an affidavit are not competent summary judgment evidence and are insufficient to raise a fact issue in response to a motion for summary judgment, under the rather broad definition of an assault, there seems to be a fact issue with respect to whether the credit card was thrown at appellant with the effect upon him mentioned in the definition.

Parenthetically, although appellees stated in their motion that the court granted their special exceptions and that appellant failed to adequately plead how he was assaulted, we find no evidence in this record of special exceptions or objections or a court ruling on those matters. Finding there is controverted evidence about whether this assault took place, we sustain appellant's third point of error in that respect.

Because of the disposition of appellant's points of error we have made, the summary judgment must be, and is, reversed and the cause remanded to the trial court.