

## Fourth Court of Appeals
### San Antonio, Texas

## OPINION

No. 04-18-00131-CV

Lorraine **KENYON**, Individually and as Executrix of the Estate of Theodore Kenyon,
Appellant

v.

**ELEPHANT INSURANCE COMPANY, LLC**,
Appellee

From the 224th Judicial District Court, Bexar County, Texas
Trial Court No. 2016CI14055
Honorable Michael E. Mery, Judge Presiding

Opinion by:    Sandee Bryan Marion, Chief Justice
Dissenting Opinion by: Luz Elena D. Chapa, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
             Rebeca C. Martinez, Justice
             Luz Elena D. Chapa, Justice

Delivered and Filed: April 24, 2019

AFFIRMED IN PART, DISMISSED IN PART

Appellant Lorraine Kenyon, Individually and as Executrix of the Estate of Theodore Kenyon, ("Kenyon") brings this permissive interlocutory appeal from the trial court's order granting partial summary judgment in favor of Appellee Elephant Insurance Company, LLC ("Elephant").

In her first issue, Kenyon argues the trial court erred in ruling Elephant did not owe Kenyon a duty with respect to her claims for common law negligence, negligent undertaking, negligent failure to train and license, negligence per se, and gross negligence. Because we conclude the trial

court's ruling is correct as a matter of law, we affirm the trial court's order granting summary judgment on Kenyon's negligence claims.

In her second issue, Kenyon argues the trial court erred in granting summary judgment on her claims for Texas Insurance Code and Texas Deceptive Trade Practices Act ("DTPA") violations based on alleged misrepresentations. Neither this court nor the trial court expressly granted Kenyon permission to appeal this portion of the summary judgment order. Accordingly, this appeal is dismissed in part for want of jurisdiction as it relates to Kenyon's second issue.[1]

### Background

#### A. Factual background

On March 10, 2016, Kenyon was involved in a single-vehicle accident when she lost control of her vehicle on a rain-slick road in San Antonio. While inside her vehicle on the side of the road, Kenyon first called her husband Theodore and then Elephant, her insurer. A volunteer firefighter stopped by on his way to another call and asked whether Kenyon was okay. Kenyon declined assistance and told the firefighter "it was okay."

Elephant's first notice of loss ("FNOL") representative Kaitlyn Moritz ("Moritz") answered Kenyon's call from Elephant's call center in Virginia. Kenyon described the accident and asked Moritz: "Do you want us to take pictures?" Moritz answered: "Yes, ma'am. Go ahead and take pictures. And—And we always recommend that you get the police involved but it's up to you whether you call them or not." Moritz testified she was trained to get information about the accident, who was at fault, and whether there were any injuries, as well as to encourage the insured

---

[1] In her third issue, Kenyon argues the trial court generally erred in granting summary judgment in Elephant's favor. To the extent Kenyon's third issue is duplicative of her first issue, it is overruled. To the extent Kenyon's third issue is duplicative of her second issue, we lack jurisdiction to consider it.

to take photographs of the accident scene. Moritz was not trained to inquire about the insured's safety or to ask whether the insured is in a safe location.

While Kenyon was on the phone with Moritz, Theodore arrived at the scene. Kenyon told Theodore "they need pictures," and he began taking photographs of Kenyon's damaged vehicle. As Theodore was taking photographs, another motorist, Kimberly Pizana ("Pizana"), lost control of her vehicle and collided with Theodore. Theodore later died of his injuries.

## B.    Procedural background

Individually and as executrix of Theodore's estate, Kenyon sued Pizana for negligence and Elephant for common law negligence, negligent undertaking, negligent failure to train and license, negligence per se, and exemplary damages based on gross negligence. Kenyon also asserted Insurance Code and DTPA claims against Elephant based on Elephant's alleged misrepresentation that photographs were required for coverage, as well as additional claims related to Elephant's alleged failure to timely settle and pay her uninsured/underinsured motorist ("UIM") coverage claims.

Elephant filed traditional and no evidence motions for summary judgment. After a hearing, the trial court found Elephant "owed no duty to [Kenyon] with respect to [her] negligence, negligent undertaking, negligent failure to train and license, negligence per se, and gross negligence claims" and granted summary judgment in Elephant's favor on each of those claims. Pursuant to Texas Civil Practice and Remedies Code § 51.014(d) and Texas Rule of Civil Procedure 168, as well as the parties' mutual agreement, the trial court expressly permitted Kenyon to file an interlocutory appeal of this portion of the summary judgment order. The trial court also granted summary judgment in Elephant's favor on all of Kenyon's remaining claims except those related to UIM coverage. The UIM coverage claims and Kenyon's negligence claim against Pizana

are the only claims that remain pending in the trial court. Kenyon timely filed a petition for permissive appeal in this court, which was granted.

## Jurisdiction

As a preliminary matter, we consider whether and to what extent we have jurisdiction over this permissive interlocutory appeal.

The trial court's summary judgment order satisfies the technical requirements for permissive appeal by stating: (1) the "controlling issue of law" appealed, which is "[w]hether [Kenyon] [is] entitled to assert a cause of action for common law negligence, negligent undertaking, negligent failure to train and license, negligence per se, or gross negligence against [Elephant] for damages arising from the death of Theodore Kenyon"; (2) there is substantial ground for difference of opinion on this controlling issue of law; and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(d); *City of San Antonio v. Tommy Harral Constr., Inc.*, 486 S.W.3d 77, 80–81 (Tex. App.—San Antonio 2016, no pet.).

In addition, the trial court made a substantive ruling on the specific legal issue presented, holding Elephant "owed no duty to [Kenyon] with respect to [her] negligence, negligent undertaking, negligent failure to train and license, negligence per se, and gross negligence claims." *See Tommy Harral*, 486 S.W.3d. at 80 ("Because an appellate court may only address an action taken by the trial court, the record presented upon a permissive appeal must reflect the trial court's substantive ruling on the specific legal issue presented for appellate-court determination."). Therefore, we have jurisdiction over this permissive appeal to the extent it is limited to the "controlling question of law" articulated by the trial court. Kenyon's first issue squarely addresses this question.

Kenyon's second issue, however, addresses whether the trial court erred in granting summary judgment on Kenyon's claims for Insurance Code and DTPA violations. We lack jurisdiction to review that question. *See id.* at 82–83 (concluding appeal must be dismissed because "jurisdictional requirement that the record affirmatively reflect the trial court's substantive ruling on the issue presented on appeal has not been satisfied"). Accordingly, we dismiss Kenyon's second issue for want of subject matter jurisdiction.

## Discussion

Kenyon argues the trial court erred in granting traditional summary judgment in Elephant's favor on her claims for common law negligence, negligent undertaking, negligent failure to train and license, negligence per se,[2] and exemplary damages based on gross negligence.

### A.    Standard of review

We review the grant of traditional summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). The party seeking traditional summary judgment has the burden to show no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. *Id.* at 215–16 (citing TEX. R. CIV. P. 166a(c)). "When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Id.* at 215.

### B.    Common law negligence

The trial court granted Elephant's motion for traditional summary judgment on Kenyon's common law negligence claim based on its conclusion that Elephant did not owe Kenyon a duty of care. Kenyon argues the trial court erred because an insurer owes its insured a common law

---

[2] Kenyon did not address her claim for negligence per se in her appellate briefing or during oral argument. Accordingly, to the extent Kenyon argues the trial court erred in granting summary judgment on this claim, Kenyon's argument is waived. *See* TEX. R. APP. P. 38.1.

duty to "exercise reasonable care in providing [post-accident] guidance so as not to increase the risk of harm to its insured." During oral argument, Kenyon asserted this duty necessarily obligated Elephant to ascertain whether Kenyon was safe before permitting or encouraging her (and Theodore) to take photographs of her vehicle.

The question before the trial court and this court is whether Texas law recognizes a duty on the part of an insurer who accepts a call from its insured and provides "post-accident guidance." Kenyon and Elephant agreed during oral argument that there does not appear to be any Texas precedent for recognizing such a duty under these or similar circumstances. Accordingly, we apply the "*Phillips* factors" analysis, described below, to determine whether to recognize such a duty in this case.[3]

### i.    *Phillips* factors analysis

"The threshold inquiry in a negligence case is duty. . . . [T]he existence of duty is a question of law for the court to decide from the facts surrounding the occurrence in question." *Greater Hous. Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990); *accord Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499, 503 (Tex. 2017). In a case in which a duty has not been recognized under the particular circumstances presented, we must determine whether such a duty should be recognized. *Pagayon*, 536 S.W.3d at 503. The supreme court has articulated considerations for doing so:

> The considerations include social, economic, and political questions and their application to the facts at hand. We have weighed the risk, foreseeability, and

---

[3] We disagree with the dissent that Kenyon relies on a "special relationship" giving rise to a duty of care. Kenyon does not reference "special relationship" anywhere in her brief except in the section addressing negligent failure to train, in which she states the standard of review "[i]n the absence of a special relationship between an actor and another that imposes a duty." Instead, Kenyon urges us to perform the *Phillips* factors analysis to recognize a duty in this case. To the extent Kenyon would argue a duty is supported by a special relationship between insured and insurer, we hold that argument is waived. *See* TEX. R. APP. P. 38.1. Regardless, any special relationship in the insurance context imposes on insurers a duty of good faith and fair dealing in processing claims. *See Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987). We do not believe such a duty would extend to require an insurer to "exercise reasonable care in providing [post-accident] guidance so as not to increase the risk of harm to its insured."

likelihood of injury against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. Also among the considerations are whether one party would generally have superior knowledge of the risk or a right to control the actor who caused the harm.

*Id.* at 504 (quoting *Humble Sand & Gravel, Inc. v. Gomez*, 146 S.W.3d 170, 182 (Tex. 2004)). "Of all these factors, foreseeability of the risk is the foremost and dominant consideration." *Phillips*, 801 S.W.2d at 525 (internal quotation marks and citation omitted).

Some of these considerations, such as risk and foreseeability, "may turn on facts that cannot be determined as a matter of law and must instead be resolved by the factfinder." *Humble Sand & Gravel*, 146 S.W.3d at 182. Such cases are "unusual," however, because "the factual situation presented must be evaluated in the broader context of similarly situated actors." *Pagayon*, 536 S.W.3d at 504 (citing *Humble Sand & Gravel*, 146 S.W.3d at 182). "The question is whether a duty should be imposed in a defined class of cases, not whether the facts of the case at hand show a breach." *Id.* In addition, the material facts in most cases are either undisputed or can be viewed in the light required by the procedural posture of the case. *Id.*

Here, the facts material to our inquiry are essentially undisputed and, in any event, must be viewed in the light most favorable to Kenyon as the summary judgment nonmovant. *See id.*; *see also Knott*, 128 S.W.3d at 215 ("When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor."). Accordingly, we apply the facts in the record and weigh the relevant considerations to determine whether to recognize the duty Kenyon advocates.

ii.     **Foreseeability of risk**

"In the absence of foreseeability, there is no duty." *NationsBank, N.A. v. Dilling*, 922 S.W.2d 950, 954 (Tex. 1996) (per curiam); *accord Midwest Emp'rs Cas. Co. ex rel. English v. Harpole*, 293 S.W.3d 770, 779 (Tex. App.—San Antonio 2009, no pet.). "Harm is foreseeable if

a person of ordinary intelligence should have anticipated the danger created by an act or omission." *Bos v. Smith*, 556 S.W.3d 293, 303 (Tex. 2018). Where courts are asked to determine whether a defendant has a duty to protect a plaintiff from the tortious or criminal conduct of third parties, "[f]oreseeability usually is determined by whether the defendant is aware of prior, similar conduct by third parties." *Id.* (internal quotation marks and citation omitted). The prior conduct of third parties must be sufficiently similar to give the defendant notice of the general nature of the danger. *Id.* We must consider not only the foreseeability of a general danger, but whether the injury to the plaintiff (or someone similarly situated) could be anticipated. *Id.*

Here, Kenyon argues "[i]t is readily foreseeable that in sending an insured out into the accident scene to take photographs, the insured might be struck by another vehicle and injured." In support, Kenyon cites Elephant's FNOL representative Moritz's testimony that she understands "there may be dangerous situations or circumstances" surrounding an insured who calls to report a single-vehicle accident. Kenyon also cites the testimony of the responding police officer, who stated it is generally not advisable for motorists to photograph crash scenes because doing so "put[s] [one]self in danger."

There is no evidence in the record, however, that Elephant was aware of any prior, similar incidents in which an insured was injured (much less struck by another vehicle) while photographing an accident scene. There also is no evidence Elephant was aware of the potential risk of injury to Theodore. A fair reading of the transcript of Kenyon's call to Elephant demonstrates Moritz was not aware Theodore had arrived at the scene and commenced taking photographs at Kenyon's instruction. Even where it is generally foreseeable that "there may be dangerous situations or circumstances," a defendant has no legal duty to protect a plaintiff from a particular injury the defendant could not reasonably have foreseen. *See Timberwalk Apartments, Partners v. Cain*, 972 S.W.2d 749, 757 (Tex. 1998); *Bos*, 556 S.W.3d at 304; *Mellon Mortg. Co.*

*v. Holder*, 5 S.W.3d 654, 657 (Tex. 1999); *see also Harpole*, 293 S.W.3d at 780–81. Absent anything in the record demonstrating Elephant was aware of prior, similar injuries, the foreseeability consideration weighs against finding a duty in this case. *See Bos*, 556 S.W.3d at 303.

### iii.   Superior knowledge of the risk or right to control the actor who caused the harm

Kenyon argues Elephant had superior knowledge of the risk because Kenyon told Moritz it was her first accident. In response, Elephant cites Kenyon's testimony indicating she was in the best position to assess the risk to Theodore:

> Q. [by Elephant's counsel] Well, between you and Ms. Moritz, were you in the better position to evaluate your situation—situation to determine if you were in a safe place?
>
> [objection]
>
> [A.] [by Kenyon] Yes. . . .
>
> Q.  At that point in time, are you feeling like you're in a safe place?
>
> A. Yes. . . . I'm off the road. . . . Yeah. No one's going to hit me, I thought. . . .
>
> Q. When your husband came up and you had that conversation with him about the photographs, did you feel like your husband was in a dangerous place at that time?
>
> A. No.
>
> Q. If you had felt that he was in a dangerous position, would you have taken action to make sure he was no longer in a dangerous position?
>
> A. Yes.
>
> Q. Like tell him to get out of the road or, "Let's get out of here," or something like that?
>
> A. Yes. . . .
>
> Q. . . . When your husband got there and you had felt like y'all were in a dangerous place and another car could come around and hit y'all at any moment, would you have asked your husband to go take photographs?

[objection]

[A.] Of course not.

Moritz took Kenyon's call from Elephant's call center in Virginia.

While Elephant and its employees may have more knowledge regarding motor vehicle accidents generally, Kenyon was in a better position than a person located in Virginia to assess the risk of Theodore's and her particular circumstances at the time of the accident. *See Ovalle v. Mares*, No. 04-04-00806-CV, 2005 WL 3532809, at *2 (Tex. App.—San Antonio Dec. 28, 2005, no pet.) (mem. op.) (holding defendant did not owe duty to minor plaintiff she was supervising to prevent plaintiff from getting into car with intoxicated driver because plaintiff knew driver, spoke to driver beforehand, and therefore had superior knowledge of driver's intoxicated state at the time). Therefore, because Kenyon was in a better position than Elephant to assess the risk of her particular circumstances, and because there is no dispute Elephant did not have the right to control the driver who struck Theodore, these considerations weigh against finding a duty in this case.

### iv. Burden of guarding against injury

Kenyon argues the burden of imposing a duty on an insurer in a case like this one is "negligible," since all "Elephant [had] to do was to take a moment to ask its insured if they are in a safe location and, if not, to relocate themselves to a safe place and then call back." Elephant responds that imposing such a burden on an insurer "would be tantamount to imposing strict liability on insurers to protect the safety of their insureds from harm caused by third parties over whom the insurer has no control."

While the burden to inquire whether an insured is in a safe location when she calls to report a claim is not onerous, the burden to actually assess whether an insured is safe and secure enough to report a claim or take photographs of vehicle damage is likely too onerous for an insurer that is not present at the accident scene. Further, as Elephant argues, even if an insurer is required merely

to ask whether its insured is in a safe location, doing so would not have changed the outcome in this case. Kenyon testified she felt she was in a safe place at the time she called Elephant, and she did not believe Theodore was in danger while photographing her vehicle.

For these reasons, this consideration weighs against finding a duty in this case.

### v. Conclusion

Because the considerations regarding risk and foreseeability, superior knowledge and right to control the actor who caused the harm, and burden on the defendant all weigh against finding a common law duty of care in this case, we conclude the trial court did not err in concluding Elephant owed no duty to Kenyon with respect to her common law negligence claim.

## C. Negligent undertaking

The trial court also granted summary judgment in Elephant's favor on Kenyon's negligent undertaking claim. The premise of Kenyon's claim is that even if Elephant did not owe Kenyon a duty of care from the outset, Elephant assumed a duty by undertaking to answer Kenyon's telephone call and "lead her through the post-accident process."

### i. Legal standard

A duty may arise when a party undertakes to provide services either gratuitously or for compensation. *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex. 2000); *Harpole*, 293 S.W.3d at 778. The elements of a cause of action for negligent undertaking are:

(1) the defendant undertook to perform services that it knew or should have known were necessary for the plaintiff's protection; and

(2) the defendant failed to exercise reasonable care in performing those services; and either:

    (a) the plaintiff relied upon the defendant's performance; or

    (b) the defendant's performance increased the plaintiff's risk of harm.

*Harpole*, 293 S.W.3d at 778 (citing *Stutzman*, 46 S.W.3d at 838). There is no cause of action for negligent undertaking unless the defendant acted or agreed to act expressly for the plaintiff's protection. *See Knife River Corp.-S. v. Hinojosa*, 438 S.W.3d 625, 632 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); *see also Guillory v. Seaton, LLC*, 470 S.W.3d 237, 242 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) (holding non-party to contract had no cause of action against contracting party that did not agree to provide services for the benefit or protection of non-party plaintiff).

### ii. Analysis

To determine whether Elephant assumed a duty to Kenyon, we must determine whether Elephant undertook to perform services for Kenyon that it knew or should have known were necessary for Kenyon's protection. *See Stutzman*, 46 S.W.3d at 838. Kenyon argues Elephant undertook to "lead her through the post-accident process" "[b]y creating a call center and training FNOL employees to answer the insureds['] calls, often from the scene of an accident, and gather information from them beyond the information necessary to open a claim." Kenyon also argues Elephant "specifically trained [Moritz] not to inquire about the insured's safety, despite the knowledge that the insured in general, and Mrs. Kenyon specifically, was in a dangerous position."[4]

Kenyon does not cite any authority that this or similar conduct constitutes an undertaking giving rise to a duty of care beyond Elephant's contractual duty to process Kenyon's claim in good faith. Although Kenyon clearly believed she was calling Moritz for "instruction" regarding her claim, Kenyon testified she did not ask Moritz for safety advice and did not expect Moritz to

---

[4] Elephant argues there is no evidence that Elephant affirmatively directed FNOL representatives not to inquire about insureds' safety. Rather, the record only reflects that Elephant did not specifically require FNOL representatives to ask about insureds' safety.

provide safety advice. Further, Kenyon expressly argues any undertaking on Elephant's part was _not_ for Kenyon's benefit: "Elephant undertook to guide her through the post-accident process, _but did so only to benefit itself_, and was intentionally indifferent to Mrs. Kenyon's and Mr. Kenyon's safety" (emphasis added).[5]

Therefore, because Elephant did not undertake any action for Kenyon's protection, we conclude the trial court did not err in concluding Elephant owed no duty to Kenyon with respect to her negligent undertaking claim.

## D.      Negligent failure to train and license

The trial court also granted summary judgment in Elephant's favor on Kenyon's negligent failure to train and license claim. Kenyon argues Elephant was negligent in its training of FNOL representatives, including Moritz, which "left [Moritz] ill-equipped to handle Mrs. Kenyon's call in a manner that did not increase the risk of danger to her and her husband."

"The elements of a cause of action for negligently hiring, supervising, training, or retaining an employee are the following: (1) the employer owed the plaintiff a legal duty to hire, supervise, train, or retain competent employees; (2) the employer breached that duty; and (3) the breach proximately caused the plaintiff's injury." _Wal-Mart Stores, Inc. v. Sanchez_, No. 04-02-00458-CV, 2003 WL 21338174, at *5 (Tex. App.—San Antonio June 11, 2003, pet. denied) (mem. op.) (citing _LaBella v. Charlie Thomas, Inc._, 942 S.W.2d 127, 137 (Tex. App.—Amarillo 1997, writ denied)). An employer is not liable unless the employee commits an actionable tort under common law. _Id._ (citing _Gonzales v. Willis_, 995 S.W.2d 729, 739–40 (Tex. App.—San Antonio 1999, no

---

[5] To the extent Kenyon is arguing Elephant is liable based on its _failure_ to act for her benefit, a failure to act does not give rise to a negligent undertaking claim. _See Thornton v. Henkels & McCoy, Inc._, No. 13-12-00585-CV, 2013 WL 5676026, at *3 (Tex. App.—Corpus Christi Oct. 17, 2013, no pet.) (mem. op.) (holding defendant that failed to repair sagging cable line was not liable for negligent undertaking because claim requires an "affirmative course of action" and cannot be predicated upon an alleged negligent omission or failure to act) (citing _Coastal Corp. v. Torres_, 133 S.W.3d 776, 780–81 (Tex. App.—Corpus Christi 2004, pet. denied)).

pet.), *overruled in part on other grounds by Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447–48 (Tex. 2004)).

Here, the only tortious conduct Kenyon alleges Moritz committed was negligently failing to "exercise reasonable care in providing [post-accident] guidance so as not to increase the risk of harm to [Elephant's] insured"—*i.e.*, the same conduct Kenyon alleges as the basis for her common law negligence claim. Because we have concluded Elephant (and its agent) did not owe Kenyon such a duty in this case, we also conclude the trial court did not err in holding Elephant owed no duty to Kenyon with respect to her negligent failure to train and license claim.

## E.      Gross negligence

Finally, the trial court granted summary judgment in Elephant's favor on Kenyon's request for exemplary damages based upon gross negligence. During the hearing on Elephant's motion for summary judgment, Kenyon's counsel represented that her claim for gross negligence is based on the same conduct giving rise to her claim for common law negligence—*i.e.*, Elephant was consciously indifferent to an actual risk that Kenyon (or Theodore) would be harmed by taking photographs of the vehicle at the accident scene. Again, because we agree with the trial court that Elephant did not owe Kenyon a common law duty of care in this case, we conclude the trial court did not err in concluding Elephant did not owe Kenyon a duty with respect to her claim for exemplary damages based on gross negligence.[6]

---

[6] The dissent expresses concern that under our decision today, nothing an insurer could say or do while on the phone with an insured at the scene of an accident could breach the duty of ordinary care. We do not intend to reach such a sweeping conclusion. Rather, we recognize that by taking an affirmative act, a party may incur a "duty to others to exercise the care of a reasonable man to protect them against an unreasonable risk of harm to them arising out of the act." *See* RESTATEMENT (SECOND) OF TORTS § 302, cmt. a. Based on the facts of this case, however, we do not believe Elephant affirmatively acted so as to trigger a duty.

**Conclusion**

Because we conclude Elephant did not owe Kenyon a duty with respect to her claims for common law negligence, negligent undertaking, negligent failure to train and license, negligence per se, and gross negligence, we affirm the trial court's order to the extent it granted Elephant's motion for summary judgment on those claims. Because we conclude, and Kenyon agrees, we lack jurisdiction to consider Kenyon's second issue, this appeal is dismissed in part for want of jurisdiction as it relates to the trial court's order granting summary judgment on Kenyon's Insurance Code and DTPA claims.

Sandee Bryan Marion, Chief Justice